## JACQUES *v.* JACQUES.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO HEARING—EVIDENCE—WITNESSES.

The Supreme Court hears chancery cases *de novo* on the record, but gives great weight to the findings of fact of the judge who heard the evidence and saw the witnesses.

2. JOINT TENANCY—JOINT BANK ACCOUNTS—TRANSFER OF TITLE—GIFTS—WILLS.

The vesting of title to funds in another by the creation of a joint bank account with right of survivorship is a statutory method of transfer of title; not a gift *inter vivos*, since the transferor retains an element of control and the power of revocation; nor a will, as there is no requirement of compliance with statutory formalities for the making of a will (CL 1948, §§ 487.703, 702.5).

3. SAME—JOINT BANK ACCOUNT—RIGHT OF SURVIVORSHIP—TITLE.

The term "right of survivorship" when used in creating a joint bank account constitutes prima facie evidence of intention to vest title in the survivor (CL 1948, § 487.703).

4. EVIDENCE—PRESUMPTIONS.

The facts which give rise to a presumption, as distinguished from the presumption itself, are evidentiary; and when established by evidence, remain in the record and are properly considered to sustain a finding of the fact presumed, no matter what other facts the record may reveal.

5. JOINT TENANCY—JOINT BANK ACCOUNT—INTENTION OF DECEDENT—EVIDENCE.

The trial judge was entitled to find evidence of mentally competent decedent's intention to vest title to joint bank account

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error §§ 814, 815.
[2] 7 Am Jur, Banks § 427 *et seq.*
[3] 7 Am Jur, Banks § 425.
[4] 20 Am Jur, Evidence § 166.
 Presumption as evidence. 95 ALR 878.

with right of survivorship in defendant daughter-in-law, survivor of himself and defendant, from testimony showing that decedent had created and maintained such account over 8 years until his death and that decedent and defendant lived next door to each other (CL 1948, § 487.703).

6. SAME—CONSTRUCTIVE TRUST—EVIDENCE.

Evidence before trial court at close of plaintiff's proofs in suit for accounting by defendant brother and sister-in-law as to funds latter had withdrawn from joint bank account in name of decedent and such defendant with right of survivorship, including evidence first barred and later admitted, *held*, to have justified decree dismissing bill of complaint (CL 1948, § 487.703).

Appeal from Bay; Louis (David R.), J. Submitted January 8, 1958. (Docket No. 25, Calendar No. 47,087.) Decided April 14, 1958.

Bill by John Jacques against Raphael Jacques, Jane Jacques and others to impress trust on funds withdrawn from a joint and survivorship bank account. Bill dismissed. Plaintiff appeals. Affirmed.

*van Benschoten & van Benschoten,* for plaintiff.

*Joseph F. Gricar,* for defendants Jacques.

EDWARDS, J. Plaintiff John Jacques filed a bill of complaint in equity seeking to require his brother and sister-in-law, defendants Raphael Jacques and Jane Jacques, to account, as constructive trustees, for certain funds which Jane Jacques had withdrawn from an account in the Peoples National Bank of Bay City.

The account had been originally opened by plaintiff's father, John Fabian Jacques, who subsequently added Jane's name thereto.

On hearing before the circuit court of Bay county, the court at the close of plaintiff's proofs granted a

motion to dismiss the bill of complaint, from which decree plaintiff now appeals.

The principal issue urged upon this Court by appellant is that the court erred in dismissing plaintiff's bill of complaint since there was evidence presented by the plaintiff which rebutted the statutory presumption of survivorship in the joint bank account.

This is really a controversy between 2 brothers pertaining to the distribution of the assets of their father's estate. The father, John Fabian Jacques, died, in his late seventies, on February 13, 1952. Long prior to his death decedent, on September 26, 1936, had opened a savings account at the National Bank of Bay City, which subsequently became the Peoples National Bank of Bay City.

On June 30, 1943, according to the testimony of the assistant cashier of the bank who was called as a witness by plaintiff, this savings account was changed to a joint account by the addition of the name of Mrs. Jane Jacques and by the addition of the phrase under the word "Remarks," "either or the survivor of either." The assistant cashier of the bank testified as follows:

"The stamped date, June 21, 1943, opposite the remarks 'Either or the survivor of either' means that these remarks were placed upon the card at that time. The date stamped opposite the name or signature of Mrs. Jacques was 'June 30, 1943.' This would be the date that Mrs. Jacques signed the card. In other words, she signed the card June 30, 1943, and the words 'Either or the survivor of either' were stamped on the card June 21, 1943. This is all that is contained on the card, plaintiff's exhibit 4, numbered 2151. There is 1 exception however, and that is that the word 'or' is printed between the name or signature of John F. Jacques and the signature of Mrs. Jane Jacques on plaintiff's exhibit 4, card number 2151. * * *

"The account in question was a joint account with right of survivorship. · The words 'either or the survivor of either' were used specifically."

During the period from 1940 to 1950 decedent either lived with or next door to Jane and Raphael Jacques. During most of this period he was in good mental and physical health.

It is undisputed on this record that the status of the account was never changed down to the death of Mr. Jacques on February 13, 1952, and that subsequent thereto, on February 20, 1952, seven days after decedent died, all of the funds in the account were withdrawn by Jane Jacques.

Decedent had made a will by which he provided various bequests to the children and grandchildren who were natural objects of his bounty. The will provided for the residue of the estate to be left to his 2 sons equally.

It is plaintiff's claim that this bank account was joint only as a matter of convenience, and that the funds therein should actually be regarded as an asset of the estate and descend under the will.

In seeking to establish that defendant Jane Jacques' name was placed upon this account for the convenience of decedent and as a matter of trust, plaintiff relies principally upon 3 aspects of the testimony referred to below.

In January, 1952, according to the testimony of plaintiff's wife, Theresa, the 2 Jacques brothers and their wives met to discuss problems posed by their father's illness. Questions were raised as to whether or not any funds could be drawn from the decedent's account. Theresa Jacques testified that Jane Jacques thereupon said:

"A long time ago Grandpa took me into the bank and had my name put on his account so that in case anything happened to him I could get money for him, but I don't know if it's still good or not."

It seems that subsequently Jane Jacques did draw some funds for use in relation to decedent's last illness.

Next, it appears that in decedent's will there was a phrase which ran:

"At the present time I have sufficient funds to take care of all my debts and obligations and funeral expenses in liquid assets on hand."

And, third, at the time the will was read there was testimony that Theresa, after reading the above phrase, stopped and said to Raphael Jacques, "that would be the money in the bank." Whereupon Raphael Jacques responded, "Yes."

The record which we have reviewed reveals a number of other pertinent facts. Decedent purported to dispose of most of his estate by will, but actually he gave effect to these bequests by deeds of real estate prior to his death. From 2 such deeds, both John and Raphael realized, through sale of the property concerned, approximately $12,500 apiece.

Further, the record indicates that in 1951 after the establishment of the Bay City bank account, and long after 1943 when it was made a joint account with Jane Jacques, decedent established another individual bank account in a Flint bank where from time to time he deposited sums of money. It also appears from the testimony of plaintiff's wife that decedent in his last illness knew of Jane Jacques's power to draw on this account. Mrs. John Jacques testified:

"He did ask if we needed money, and if we needed money Jane would get it for us."

The crucial statute involved in this case is CL 1948, § 487.703 (Stat Ann 1957 Rev § 23.303):

"When a deposit shall be made, in any bank by any person in the name of such depositor or any other

person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of 1 of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof.

"When a deposit has been made, or shall hereafter be made, in any banking institution transacting business in this State, in the names of 2 or more persons, payable to either or the survivor or survivors, such deposit or any part thereof or any interest or dividend thereon and any additions thereto, made by any 1 of the said persons, shall become the property of such persons as joint tenants, and the same shall be held for the exclusive use of the persons so named and may be paid to any 1 of said persons during the lifetime of said persons or to the survivor or survivors after the death of 1 of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof.

"The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such

depositors to vest title to such deposit and the additions thereto in such survivor or survivors."

Plaintiff makes no claim of fraud or undue influence in the creation of the joint account. The basic question posed in this matter is whether this Court should reverse the action of the chancellor who heard the testimony, on grounds that the evidence contained in the record did not support his decree finding for defendants.

The chancellor discussed the crucial facts thus in his opinion:

"The defendant has made a motion * * * based upon * * * her contention, that the plaintiff has failed to overcome the presumption that this was a valid joint account created between the deceased John Fabian Jacques and Jane Jacques, and therefore has asked that the prayer for relief claimed and asked for by the plaintiff be denied.

"In viewing all of the testimony in this case, the court is of the opinion that there is not any bit of evidence, either singly, individually or in combination with other evidence, which in itself or taken in context with all of the other evidence would rebut the presumption which exists that there was a valid joint account created originally when the account was opened and that this condition continued.

"Now, the evidence, probably the strongest evidence in the case presented by the plaintiff is that which the plaintiff contends occurred in the early part of January preceding the deceased's death. The court has, I believe, made a verbatim record of that in its notes, and we do not find that there is anything in that conversation which the plaintiff alleges took place which would show that there was something other than a joint account intended at the time it was opened.

"It is true that the evidence was given, and the court must believe it when considering it in view of a motion, the court must take it at its face value and

that is what the court has done, it's true that the defendant Jane Jacques said that it had been opened in their joint names so that she could draw out of it John Fabian's money if he got sick. Now, that could be very true and still not necessarily by any means mean or even mean at all, whether necessarily or not, that no joint account was intended. It could have been 1 of the incidents of convenience which induced John Fabian Jacques to create this type of an account, but in my mind it in no way excludes the possibility that he had that in mind and also intended that there should be the incidence of a joint account which chiefly is the right of survivorship."

This being a chancery proceeding, we hear the matter *de novo* on the record, but we give great weight to the findings of fact of the judge who heard the evidence and saw the witnesses. *Blough* v. *Steffens,* 349 Mich 365; *Hartka* v. *Hartka,* 346 Mich 453; *Ruch* v. *First National Bank of Three Rivers,* 326 Mich 52; *Bannasch* v. *Bartholomew,* 350 Mich 546.

In Michigan the vesting of title to funds in another by the creation of a joint bank account with right of survivorship is a statutory method of transfer of title. While such a concept has some of the aspects of a gift *inter vivos,* it is plainly not a common-law gift *inter vivos* because the donor retains an element of control and the power of revocation. (See *Rasey* v. *Currey's Estate,* 265 Mich 597; *In re Renz' Estate,* 338 Mich 347.)

In some sense the joint and survivorship bank account has the effect of a testamentary disposition, but plainly it is not a will because there is no requirement of compliance with statutory formalities for the making of a will. See CL 1948, § 702.5 (Stat Ann 1943 Rev § 27.3178[75]).

The great convenience in allowing title to funds previously belonging to one to vest forthwith on his death in a loved one who is the natural object of his

bounty has led 5 States to create joint and survivorship account statutes which give legal recognition to this concept of transfer of title unknown to the common law. Some who have recognized its value have referred to it as "the poor man's will."* Kepner, The Joint and Survivorship Bank Account—A Concept Without a Name, 41 Cal L Rev 596.

The language of our Michigan statute which vests title in the survivor should be noted:

"The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors." CL 1948, § 487.703 (Stat Ann 1957 Rev § 23.303).

The statutory language above refers to the establishment of a joint account in statutory form as "prima facie evidence * * * of the intention of such depositors to vest title." Michigan case law has, however, frequently referred to "a statutory presumption." *Mineau* v. *Boisclair,* 323 Mich 64; *Pence* v. *Wessels,* 320 Mich 195; *Mitts* v. *Williams,* 319 Mich 417; *Manufacturers National Bank* v. *Schirmer,* 303 Mich 598; *Allstaedt* v. *Ochs,* 302 Mich 232; *Van't Hof* v. *Jemison,* 291 Mich 385.

If this be held to mean merely that the prima facie evidence of intention may be rebutted by competent contrary evidence, there can be no quarrel with these cases.

Appellant in this case, however, argues to us largely on the strength of the cases cited above that since case law holds that the establishment of such a joint bank account with right of survivorship creates merely a rebuttable presumption, therefore, when

---

* *In re Edwards' Estate,* 140 Or 431, 436 (14 P2d 274, 276).

any contrary evidence is presented, the presumption disappears and may not be weighed in the balance against such evidence.

The logical effect of such a rule would be, in the event of any evidence contrary to an intention to vest title in a survivor, to force the survivor to prove his title to the bank account as if the statute had never been passed, and in accordance with the common-law rules pertaining to gifts *inter vivos*.

We do not read the statute this way. Nor do we think Michigan's case law can properly be interpreted as appellant urges. As noted, this statute validates a new method of vesting title to funds. It makes the mere creation of the joint account with the use of the words "right of survivorship" prima facie evidence of intention to vest title.

In the first case, which dealt with a Michigan joint and survivorship bank account statute similar in purpose to the present statute (PA 1909, No 248, § 3 [CL 1915, § 8040]), the intent of the legislature was defined thus:

"We are of opinion that in enacting the legislation in question it was the legislative intent not only to protect banks in the payment of deposits made in the manner indicated by the statute, but, in the first instance and in the absence of competent evidence to the contrary, to actually fix the ownership of the fund in the persons named as joint tenants with the attendant right of survivorship therein." *In re Rehfeld's Estate,* 198 Mich 249, 253.

See, also, *Powell* v. *Pennock,* 198 Mich 573; *People's State Bank of Holland* v. *Miller's Estate,* 198 Mich 783; *In re Taylor's Estate,* 213 Mich 497.

Further, in *Lau* v. *Lau,* 304 Mich 218, this Court held (p 224):

"Reasonably clear and persuasive proof, stronger than appears in this record, is required to overcome the statutory provision that deposits of the character

here involved 'become the property of' the survivor of the joint depositors. Otherwise there would be no security or certainty as to the rights of such surviving depositors."

In the case primarily relied upon by appellant, *Allstaedt* v. *Ochs, supra,* Mr. Justice BUSHNELL's opinion, in dealing with the statutory language, refers to it as creating a presumption of *ownership,* rather than a presumption of decedent's intention.

Plainly, the facts bearing on decedent's intention which established that presumption of ownership are evidence and were for the consideration of the court below.

"The facts which give rise to a presumption, as distinguished from the presumption itself, are evidentiary; those facts, when established by evidence, remain in the record and may be properly considered by the jury as they tend to sustain a finding of the fact presumed, no matter what other facts the record may reveal. It is not the presumption or inference that the jury considers in such case, but only the facts and whatever inferences flow therefrom." 20 Am Jur, Evidence, § 166, p 171.

The cardinal fact in this case is that decedent did undoubtedly knowingly create and maintain until his death a bank account made joint with right of survivorship in a daughter-in-law, defendant Jane Jacques. The chancellor was entitled to find evidence of decedent's intention therein.

Indeed, in our current case, the chancellor found no testimony which squarely contradicted decedent's intention to vest title in the survivor. We have here an account established many years before death by a father completely mentally competent and during most of the succeeding years in good physical health. The beneficiary of the account is a daughter-in-law next to whom the father had lived for many years. The record indicates that deceased before his death

distributed the bulk of his estate by gifts *inter vivos* without partiality between his 2 sons. The record discloses that in subsequent years, after making the disputed account joint with his daughter-in-law, the father set up still another bank account wholly individually and used it for such purposes as he wished.

While the evidence relied upon by the appellant may well infer that 1 of the purposes of decedent in establishing this account was to make it possible for his daughter-in-law to pay some of his bills at his direction, we agree with the chancellor below that such testimony was not necessarily inconsistent with decedent's expressed intention of creating survivorship rights in defendant Jane Jacques. The evidence before the chancellor at the close of plaintiff's proofs fully justified his decree dismissing plaintiff's bill of complaint. We have read with interest the testimony which plaintiff sought to introduce and which the court first barred and later admitted. None of it, in our view, if admitted in the first instance, would have changed the result. We find no prejudicial error.

Affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, VOELKER, and KAVANAGH, JJ., concurred.