THOMPSON v. STEHLE.

1. TRUSTS—JOINT SAVINGS ACCOUNT—TERMINATION BY SUBSEQUENT ACTIONS.

Conclusion of trial court that oral trust with respect to balance of savings account in joint names of plaintiff's decedent and defendant had been terminated by action of the decedent *held*, supported by evidence (CL 1948, § 487.703).

2. SAME—ORAL TRUST—JOINT SAVINGS ACCOUNT—COMMON LAW.

The determination of whether or not there was a valid oral trust of the balance of a savings account in the joint names of plaintiff's decedent and defendant is made according to the rules of common law, where the account was established in connection with the trust to permit the carrying out thereof in accordance with the wishes of the decedent (CL 1948, § 487.703).

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 7 Am Jur, Banks § 434.
Deposit of fund belonging to depositor in bank account in name of himself and another. 149 ALR 879, 889.
[4] 54 Am Jur, Trusts § 196 *et seq.*

3. SAME—TERMINATION—RESTORATION OF FUND.

The termination of a trust relation operates to restore the fund subject to the trust to the original owner or his heirs.

4. SAME—TERMINATION—RESULTING TRUST.

A resulting trust arises as against the trustee as to property which had been conveyed upon an express trust for particular purposes but which trust had failed by reason of having been ineffectually or illegally declared or otherwise extinguished or terminated, the resulting trust arising in favor of the grantor, and those claiming under him, either in the property conveyed, or in the residue of the property remaining at the time of the failure or extinguishment of the trust, or after the purposes have been discharged.

5. SAME—TERMINATION—JOINT SAVINGS ACCOUNT—TITLE—RESULTING TRUST.

Title to balance of joint savings account the subject of an oral trust which had terminated did not pass to survivor but formed a resulting trust for the grantor, where evidence fails to show any intent to create a right of ownership in the trustee by reason of survival (CL 1948, § 487.703).

6. SAME—JOINT SAVINGS ACCOUNT—PRESUMPTION—EVIDENCE—INTENT.

The statutory presumption of ownership accorded survivor of joint savings account *held*, overcome by evidence presented relative to the purpose of creating the joint account, the termination of the oral trust which had been created and subsequent action of grantor in treating the account moneys as his own and leaving the property by will (CL 1948, § 487.703).

SOURIS, OTIS M. SMITH, and ADAMS, JJ., dissenting.

Appeal from Bay; Dardas (Leon R.), J. Submitted May 4, 1962. (Docket No. 73, Calendar No. 49,504.) Decided September 7, 1962. Rehearing denied November 5, 1962.

Bill by Carlton L. Thompson, special administrator of the estate of Frank D. LaLonde, deceased, against Loretta Stehle to impress trust on funds on deposit in joint bank account. Bill dismissed. Plaintiff appeals. Reversed and remanded for entry of decree granting relief prayed.

*John W. Piggott,* for plaintiff.

*Higgs & Higgs* (*F. Norman Higgs,* of counsel), for defendant.

Carr, C. J. Frank D. LaLonde, in June, 1958, prior to entering a hospital for a serious operation, made his savings account in the Peoples National Bank & Trust Company of Bay City joint with appellee, Loretta Stehle, turned over to her the key to his safety deposit box, and gave her certain oral instructions as to the disposition of money in the account in the event of his death, such instructions admittedly being to pay all debts and claims and give the balance to St. James Roman Catholic Church, Bay City. There was at this time approximately $1,900 in the account. LaLonde survived the operation and upon returning to his home, appellee returned to him the key to the safety deposit box. The savings account book was at all times in said box.

Appellee and her husband were tenants on a farm owned by Mr. LaLonde and visited him often. In February, 1959, Mr. LaLonde sold the farm and deposited in the account some $19,000. On July 7, 1959, he withdrew $10,000 and deposited the same in an account in another bank in his name only. He also made other withdrawals from the account in question. On the following day (July 8, 1959) he executed a will, the validity of which is not in question, by which he bequeathed the residue of his estate, after certain expenditures and bequests, to St. James Roman Catholic Church, Bay City. His death occurred May 20, 1960, at which time there remained in the account the sum of $9,890.

Appellant claims decedent did not intend to make a gift to appellee of the balance left in the joint account; that the joint account was created only as a

matter of convenience, and he, therefore, seeks to impress a trust on the funds therein for the use and benefit of St. James Church.

Defendant admits that "He (Mr. LaLonde) told me (in June, 1958) that if he died, which he thought he was going to, he was having a big operation, that I should * * * sell his furniture and pay his bills and give the rest to the church—I told him that is what I would do." But defendant asserts that inasmuch as decedent deposited $19,000 in the account (proceeds from the sale of his farm) and withdrew therefrom $10,000 which he placed in an account in his name only, and the next day executed his will, it was decedent's intention to leave the funds in question in the joint account and thus take advantage of the law governing joint accounts and save the cost of probate proceedings.

The matter came on for trial without a jury and appellee was called for cross-examination under the statute.* She testified that she did not know that the account was still joint until called by the county treasurer to be present when the deposit box was opened; further, that after the sale of the farm, and she and her husband ceased to work for decedent, they were not on such friendly terms with decedent as previously, and that she had seen him only 2 or 3 times since, the last time being in February, 1960. Previous to that time they had called on decedent almost every day and looked in on him often during his illness, running errands for groceries and medicine, doing lawn and garden chores, and giving help whenever he asked for it.

Defendant's witness, Lilley Groulx, testified that she had worked for the Stehles and that she and Mrs. Stehle called on decedent every day during the summer of 1958; that she often heard decedent men-

---

* See CL 1948, § 617.66 (Stat Ann § 27.420).—REPORTER.

tion how much he thought of the Stehles, and what a help they were to him; that one day when showing her and Mrs. Stehle an antique chair for which they expressed admiration, decedent turned to Mrs. Stehle and said, "someday you will get more than a chair." Another witness, Wilfred Barber, testified that decedent had said to him that, "She (Mrs. Stehle) was awfully good to him and she would never be sorry." Also the deposition of Birdsey Maxon (defendant's witness) contained the following:

"We (LaLonde and witness) was talking along and went by Stehle's place and he said 'there is some nice people'—I said 'I guess they are as far as I know you could not find nicer ones.' He said 'they were so good to me when I was sick, waited on me, doing things for me, took me to the doctor, took care of my berries and they are going to be well taken care of.' "

The testimony of plaintiff's witnesses (himself and relatives of deceased) tended to discredit defendant's witnesses and was aimed at bringing out the alleged ill will that existed between decedent and defendant and her husband over decedent's sale of his farm. There is no question presented as to decedent's mentality, nor as to fraud, undue influence or duress, the bank book for the joint account being in the possession of the decedent at all times during his lifetime and being in the safety deposit box at the time of his death.

The parties hereto discuss the interpretation of CL 1948, § 487.703 (Stat Ann 1957 Rev § 23.303), which reads:

"When a deposit shall be made, in any bank by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property

of such persons as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of 1 of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof.

"When a deposit has been made, or shall hereafter be made, in any banking institution transacting business in this State, in the names of 2 or more persons, payable to either or the survivor or survivors, such deposit or any part thereof or any interest or dividend thereon and any additions thereto, made by any 1 of the said persons, shall become the property of such persons as joint tenants, and the same shall be held for the exclusive use of the persons so named and may be paid to any 1 of said persons during the lifetime of said persons or to the survivor or survivors after the death of 1 of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof.

"The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors."

The trial judge in his opinion said, in part:

"Under Michigan cases, the vesting of title to funds in another by the creation of a joint bank account with right of survivorship is a statutory method of transfer of title. It has some of the elements of an *inter vivos*, yet it is not strictly such as the donor retains an element of control and the power of revocation. (See *Rasey* v. *Currey's Estate*, 265 Mich 597; *In re Renz' Estate*, 338 Mich 347.) The Michigan Supreme Court in *Jacques* v. *Jacques*, 352 Mich 127 at page 134, indicated that the joint and survivorship bank account has the effect of a testamentary disposition, but it is not a will because there is no requirement of compliance with the statutory formalities for the making of a will.

"There is no question that had Mr. LaLonde died as the result of the operation in June of 1958, that the title to the joint bank account would have passed to the defendant, impressed, however, with an oral trust to pay over any balance to the St. James Church after the payment of decedent's debts. Subsequent actions by Mr. LaLonde in regard to the account over the 2-year period immediately following the establishment of the account and before his death, clearly indicate that he had terminated the oral trust, when he made provision for the St. James Catholic Church by establishing a separate bank account in his own name and named the church as the residuary legatee under a formal will. The facts show that he increased the amount in the original bank account, after the sale of his real estate, and chose to establish a separate bank account in the Bay City bank, which he adequately disposed of by a formal will. The facts further show that he had ample opportunity to change the ownership of the original bank account before his death, and further show that he sought and had legal advice in preparing his will. Certainly, under these facts, the deceased was fully aware of the effect of the joint bank account in question, and the disposition of the funds upon his death.

"Although Loretta Stehle was in no way related to the decedent, the testimony disclosed the very close relationship between the parties to the extent that the decedent placed implicit faith in Mrs. Stehle to carry out his wishes. The will of the deceased shows that he had no close relationship with any blood relatives, in fact he chose to specifically disinherit any such relatives under paragraph 6 of his last will and testament. The uncontradicted proofs show that Mrs. Stehle had performed the little, thoughtful tasks for the deceased, that a solicitous blood relative would normally perform. The decedent set up the joint account, maintained it as originally set up, and did nothing over a 2-year period to change it.

"Not only did the plaintiff fail to overcome the statutory presumption that the deposits of this character become the property of the survivor by clear and persuasive proof, but the court must further find, from the proofs as presented, that the decedent fully intended to create a title to the bank account in Loretta Stehle upon his death."

Decree was entered in accordance with the opinion and plaintiff's suit was dismissed. It is from this decree that plaintiff takes a general appeal. The basic question in the case is whether the statutory presumption of ownership based on the creating of the joint account has been overcome by the proofs. Stated somewhat differently, was the circuit judge correct, on the record before us, in his conclusion that plaintiff was not entitled to a decree?

It is apparent from the record in the case that the arrangement between Mr. LaLonde and Mrs. Stehle was made in the first instance because of his impending operation from which he thought he would not recover. This is clear from the testimony of defendant on the hearing in circuit court. After stating that he asked her to go to the bank and obtain 2 cards that would permit the placing

of the safety deposit box in their joint names, and likewise the savings account, she further testified as to what occurred at the time. The following excerpts from her testimony indicate the exact facts involved in the situation and the purpose for which the deposit was made joint:

"*Q.* Did you have a discussion with him at that time what was to be done with the money?

"*A.* If he died.

"*Q.* What did he say?

"*A.* He told me that if he died, which he thought he was going to, he was having a big operation, that I should see—to sell his furniture and pay his bills and give the rest to the church—I told him that is what I would do.

"*Q.* The rest of what?

"*A.* The money I collected from the furniture.

"*Q.* What did he say about the money in the bank?

"*A.* Give that to the church also.

"*Q.* What church?

"*A.* I knew he went to St. James Church.

"*Q.* He told you to give it to St. James Church, didn't he?

"*A.* Yes, sir.

"*Q.* This was 2 days before he entered the hospital?

"*A.* Yes, sir.

"*Q.* This conversation took place at the time the signature cards were signed?

"*A.* Yes, sir.   *   *   *

"*Q.* After his return, did you return the deposit book to him?

"*A.* The bank book?

"*Q.* Yes?

"*A.* No.

"*Q.* You did not return it to him?

"*A.* No, it was in his safety deposit box.

"*Q.* Mrs. Stehle, do you recall when testifying in probate court in June, 1960?

"*A.* Yes.

"*Q.* I asked you was it returned to him after his release and your answer was yes?

"*A.* Yes, I gave him the key to the safety deposit box but I did not have possession of the book—that was in the safety deposit box.   *   *   *

"*Q.* There was no further discussion between you, it is your testimony regarding this account, after the signature cards were signed and returned to the bank?

"*A.* No.

"*Q.* Nor any further discussion what was to be done with the money?

"*A.* No.

"*Q.* You knew exactly what he wanted done—am I correct, there was no question in your mind what he wanted done with this money?

"*A.* Yes.

"*Q.* Yes—there was a question in your mind?

"*A.* No.

"*Q.* There was no question in your mind?

"*A.* No.

"*Q.* You knew you could not withdraw this money for your own use and benefit?

"*A.* I knew that.

"*Q.* You knew that from the instructions which he gave to you?

"*A.* Yes, sir.

"*Q.* And so once you returned the safety deposit key to Mr. LaLonde, that was the end of this particular relationship regarding the account, is that correct?

"*A.* Yes, sir."

Defendant was further asked if Mr. LaLonde told her that he had made a will, that he had taken care of matters the way he wanted them and that there was nothing further for her to do. To such questions defendant answered in the affirmative. She was then further questioned as follows:

"*Q.* At the time of Mr. LaLonde's death, did you know whether or not the safety deposit box was still in your joint name?

"*A.* No, sir.

"*Q.* How did you learn it was?

"*A.* I went to the bank.

"*Q.* And the bank told you it was?

"*A.* Yes, sir.

"*Q.* At that time did you know that the account that had been joint was still joint?

"*A.* I don't know.

"*Q.* You didn't ask the bank about that at that time, did you?

"*A.* No, sir.

"*Q.* The first time you knew the bank account was still joint or what was in it was when you were called into the bank to be present when the county treasurer opened it, wasn't that true?

"*A.* Right."

It is apparently conceded that in the inception of the relation created by the joint account the money therein was understood by the parties to be impressed with an oral trust by which any balance remaining after the payment of decedent's debts was to be turned over by defendant to the St. James Church. The trial judge so held in his opinion and further concluded that the acts of Mr. LaLonde in withdrawing the sum of $10,000 from the account in question and depositing it in another bank in his own name, and the making of the will naming the church as residuary legatee, constituted a termination of the oral trust. Such conclusion is fully supported by the record, especially by the testimony of defendant. No question is raised in the case as to the validity of the oral trust, which was subject to interpretation under the rules of the common law. The joint account was established in connection with such trust to permit the carrying out thereof in accordance with the wishes of Mr. LaLonde.

The question arises as to the effect on the joint account created when the trust relation terminated. It is obvious that such account was not established with the purpose in mind of benefiting defendant. Rather, it was a method for carrying out the wishes of Mr. LaLonde. To that end it was of course necessary that defendant be in the position of an owner, subject to the trust, in the event of death as the result of the operation which he contemplated.

The rule seems to be well established in Michigan that the termination of a trust relation operates to restore the fund subject to the trust to the original owner. In *Walters* v. *Pittsburgh & Lake Angeline Iron Co.*, 201 Mich 379 (1 ALR 624), the question at issue was the distribution of funds left after the termination of a trust composed of contributions from individuals, which fund was designed for the payment of benefits to injured employees. The arrangement made terminated on the taking effect of the workmen's compensation law of the State (PA 1912 [1st Ex Sess], No 10 [CL 1948, § 411.1 *et seq.* (Stat Ann § 17.141 *et seq.*)]). The decree of the circuit court provided for the distribution of the balance of the fund to those who had made contributions. In affirming the decree, this Court in its opinion said, in part (p 386):

"The applicable rule was stated by the learned trial judge when he said:

" 'The fund was deposited with and held by the company upon the express trust to disburse so much thereof as was necessary from time to time, in the payment of injury and death benefits, while the mine continued in operation. When the mine ceased operations the purposes of the trust were discharged and the trust became extinguished. Upon the happening of the event, there being no agreement or understanding, express or implied, providing for or contemplating the disposal of any balance in the fund,

a resulting trust arose in favor of all who at any time contributed to the fund.'

"It is the general rule that if a trust for a specific purpose fails by the failure of the purpose, the property reverts to the donor or his heirs. 1 Perry on Trusts and Trustees (6th ed), § 159. And in 39 Cyc p 110, the rule is stated as follows:

" 'Where property is conveyed upon an express trust for particular purposes, but, by reason of its being ineffectually or illegally declared, the trust fails, or is otherwise extinguished or terminated, a resulting trust arises as against the trustee, in favor of the grantor, and those claiming under him, in the property conveyed, or in the residue of the property remaining at the time of the failure or extinguishment of the trust, or after the purposes of the trust have been discharged.' "

It is significant that Mr. LaLonde after the termination of the oral trust treated the account as his property. He deposited the proceeds from the sale of his farm therein and then withdrew the sum of $10,000, approximately 1/2 of the account as it then stood, for deposit in another bank. Immediately following such withdrawal he made his will in which he directed the payment of debts and funeral expenses from his estate, of which he made full testamentary disposition, the principal recipient of his bounty being the St. James Church. Defendant, as she testified, did not believe that she had any interest in the account because of the termination of the trust. It is a fair inference from her statements that she had no intention of claiming the balance remaining therein at the time of Mr. LaLonde's death until she was advised by the bank that her name was on the card that had been filled out and filed with the bank at the time of the making of the arrangements immediately prior to Mr. LaLonde's entering the hospital for his operation.

The statements that Mr. LaLonde made to the witnesses who testified in defendant's behalf with reference to his feeling of gratitude toward defendant and her husband, and on which defendant relied on the hearing in circuit court, were significant as indicating that at that time he contemplated taking some action to reward them. Such statements were not consistent with the claim that Mr. LaLonde intended at the time that the balance in the joint account should upon his death become the sole property of Mrs. Stehle. Apparently he did not carry out his intention with reference to a tangible expression of his kindly feeling toward defendant and her husband. Due to the fact that the sale of the farm, which Mr. and Mrs. Stehle had occupied as tenants, was made without notice to them, the congenial relationship that had previously existed was materially affected.

It is not disputed that the account in question was made joint in the first instance in order that a disposition of the funds might be made, under the oral trust, to carry out the wishes and purposes of Mr. LaLonde. It was not intended for the benefit of defendant, and there is nothing in the record before us to justify a conclusion that the original purpose involved in the creating of the joint account was changed, except that inferences may be drawn from the acts of the owner of the account that he intended to change the situation that brought about the establishing of the oral trust by the making of a formal will taking care of his debts and disposing of his entire estate. He obviously considered that he had the right to withdraw from the account as he saw fit and, in fact, he might have obviated any question as to his intent by withdrawing the entire amount remaining therein. The fact that he did not cause the records of the bank to be changed is not in and of itself sufficient to justify a conclusion that the character of

the funds on deposit was changed in such manner as to create in defendant a right of ownership by survival in the moneys deposited by Mr. LaLonde. The conduct of both parties is clearly at variance with any such position or presumed intention.

The interpretation of the statutory provision involved has been before this Court in numerous cases, among which are *Mitts* v. *Williams,* 319 Mich 417, and *Jacques* v. *Jacques,* 352 Mich 127. The statutory presumption upon which defendant relies must be regarded as overcome by the proofs relating to the purpose of creating the joint account and subsequent acts bringing about, as the trial judge correctly held, the termination of the oral trust to which the account was subject. The incidents of such a trust were under consideration in *Gardner* v. *City National Bank & Trust Co.,* 267 Mich 270, and in *Economy* v. *Roberts,* 274 Mich 484. That such trust was subject to termination is not open to question.

For the reasons indicated the case is remanded to the circuit court with directions to set aside the decree entered in defendant's favor and to grant the relief sought by plaintiff administrator in his bill of complaint. Plaintiff may have costs.

DETHMERS, KELLY, BLACK, and KAVANAGH, JJ., concurred with CARR, C. J.

ADAMS, J. (*dissenting*). I do not believe the conclusion arrived at by Mr. Chief Justice CARR gives proper weight to the provisions of the statute* or the facts as determined by the trial judge who had the benefit of observing the witnesses. It seems to me that originally there were 2 separate transactions: (1) Frank D. LaLonde created the joint account (one which had formerly been joint between

* CL 1948, § 487.703 (Stat Ann 1957 Rev § 23.303).—REPORTER.

him and his deceased wife) with full understanding as to its consequences; and (2) he impressed upon Loretta Stehle, his joint tenant, an oral trust which ended when he recovered from his illness. However, he did not terminate the joint account as he could have done. Rather, he continued it in both his and her name. He made additional deposits to the account which he knew to be joint. When he came to make a testamentary disposition of his property, while he withdrew some funds from the account, he again did not discontinue the account but rather allowed it to remain with full knowledge that any moneys would pass to the survivor. After making his will, he told Mrs. Stehle there was nothing further she need do—that everything was taken care of. These facts, along with the testimony of the witnesses that were produced on behalf of Loretta Stehle as to the intentions of LaLonde established the creation and continuance of a joint account, as provided for under the statute, separate from the oral trust. The findings as to the facts are fully set forth in the trial judge's opinion, quoted by Mr. Chief Justice CARR, and need not be repeated. I would affirm.

SOURIS and OTIS M. SMITH, JJ., concurred with ADAMS, J.