# Order

Michigan Supreme Court
Lansing, Michigan

June 10, 2016

Robert P. Young, Jr.,
Chief Justice

Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen,
Justices

151299

*In re* Estate of DOLORES C. SOLTYS

_____

DENNIS SOLTYS, SR., and MARLENE
HARRIS,
          Plaintiffs-Appellees,

v

DAVID A. SCHMIDLIN, Personal Representative
of the Estate of KATHLEEN SCHMIDLIN,
          Defendant-Appellant.

_____/

SC: 151299
COA: 311143
St. Clair PC: 2009-000587-CZ

On order of the Court, the application for leave to appeal the February 24, 2015 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

The stay of proceedings, ordered by the Court of Appeals on November 14, 2012, is DISSOLVED.

ZAHRA, J. (*dissenting*).

I would peremptorily reverse the judgment of the Court of Appeals and remand this case to the St. Clair County Probate Court for entry of a judgment in defendant's favor because the lower courts improperly applied the statutory presumption of ownership in the survivor of joint accounts set forth in MCL 487.703.

This case involves a dispute between siblings regarding the division of certain assets of their deceased mother's estate. Leo and Dolores Soltys had three children, Kathleen Schmidlin, Marlene Harris, and Dennis Soltys. Leo and Dolores made Kathleen, defendant's decedent,[1] a joint account holder on various financial accounts beginning in 1992, and she remained a joint account holder with Dolores after Leo's death in 2004. When Dolores died in 2007, Kathleen claimed the accounts to the exclusion of Marlene and Dennis, later adding defendant as a joint account holder. In 2009, Marlene and Dennis filed the instant lawsuit against Kathleen, seeking an equitable distribution of Dolores's estate assets, including the funds in the joint accounts. Defendant responded by alleging that Dolores had intended to pass the joint accounts to

---

[1] Kathleen died during these proceedings. Her estate, with her husband, David Schmidlin, as personal representative, was substituted as defendant.

Kathleen only, relying on MCL 487.703, which creates a statutory presumption of ownership in the survivor of a joint account absent evidence of fraud or undue influence.[2]

After a bench trial, the probate court provided 17 factual findings in support of its conclusion that the two siblings had rebutted the statutory presumption created by MCL 487.703. The court thus ordered the joint accounts distributed equally among the parties.

Defendant appealed in the Court of Appeals. The panel found clear error in five of the probate court's findings of fact, but affirmed the court's judgment in favor of plaintiffs.[3] Defendant filed an application for leave to appeal with this Court, and the Court issued a peremptory order that remanded the case to the Court of Appeals for application of the proper standard of review.[4] On remand, the Court of Appeals again affirmed the probate court's judgment for plaintiffs.[5] Defendant again seeks leave to appeal in this Court.

The presumption created by MCL 487.703 is one of ownership, and not intention.[6] This Court has made clear that the mere fact that a person placed funds in a joint account is itself "cardinal" evidence that the depositor intended the funds to become jointly

---

[2] Joint accounts are governed by MCL 487.703, which provides in relevant part:

> When a deposit has been made . . . in the names of 2 or more persons, payable to either or the survivor or survivors, such deposit or any part thereof . . . made by any 1 of the said persons, shall become the property of such persons as joint tenants, . . . and may be paid to any 1 of said persons during the lifetime of said persons or to the survivor or survivors after the death of 1 of them . . . .

> The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence . . . of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors.

[3] *In re Soltys Estate*, unpublished opinion per curiam of the Court of Appeals, issued January 7, 2014 (Docket No. 311143).

[4] *In re Soltys Estate*, 497 Mich 908 (2014).

[5] *In re Soltys Estate (On Remand)*, unpublished opinion per curiam of the Court of Appeals, issued February 24, 2015 (Docket No. 311143).

[6] *Jacques v Jacques*, 352 Mich 127, 136-137 (1958).

owned by the account holders and pass to the survivor upon the other holder's death.[7] In order to rebut this cardinal evidence of the depositor's intent, a party must present "[r]easonably clear and persuasive proof" that the deposits were not intended to become the property of the surviving account holder.[8]

On remand, the Court of Appeals identified the following facts as "pertinent" to its conclusion that plaintiffs had provided reasonably clear and persuasive proof to rebut the statutory presumption of MCL 487.703:

> (1) Dennis and Marlene both testified that their parents always told them that all of the children would be treated equally; (2) the inclusion of Kathleen's name on the accounts was initially done at a time when no disharmony existed in the family; (3) Dolores had indicated that she "trusted" Kathleen and, in conjunction with this statement, indicated that Leo had wanted joint accounts in order to avoid probate; (4) defendant testified that Kathleen had told Marlene that there would be an equitable distribution of Dolores's property; (5) Kathleen had been less than forthcoming about the accounts, had lacked credibility in certain other respects, and had told Marlene that she "maybe" would get half of the real estate even though Kathleen "was a signatory to deeds conveying essentially all of Dolores's real estate to herself and Marlene;" (6) defendant testified that he believed that Kathleen had not spent any money from the accounts "because it was Dolores's money;" and (7) Kathleen made statements indicating hesitation regarding whether she was meant to receive all the money from the accounts.[9]

These factual findings that the Court of Appeals relied on are either ambiguous or irrelevant with respect to determining Dolores's intent and, in my view, do not constitute reasonably clear and persuasive proof that Dolores did not intend the joint accounts to become the property of Kathleen only.

As for factual finding (1), Dolores's statement that all her children would be treated equally does not necessarily indicate that she wanted her assets divided evenly, especially because those statements did not specifically pertain to her intent in creating the joint accounts.[10] While the lower courts relied on inferences and speculation from

---

[7] *Id.* at 137.

[8] *Lau v Lau*, 304 Mich 218, 224 (1943).

[9] *Soltys Estate (On Remand)*, unpub op at 4.

[10] See *Lau*, 304 Mich at 221-223 (holding that the decedent's statements during his lifetime that his estate would be evenly divided among his four children were insufficient

Dolores's statements, the fact that Dolores disinherited Dennis from her will shortly before her death is direct evidence that she did not intend that her assets be divided equally.

As for factual finding (2), the absence or existence of family harmony at the time the joint accounts were created is irrelevant in ascertaining Dolores's intent, particularly given that the accounts were maintained during times of both family harmony and disharmony. What is relevant is the unambiguous testimony from Dolores's attorney that Dolores understood "how joint accounts worked." Dolores thus understood that Kathleen would be entitled to sole ownership of the accounts and did nothing to change this, even in the periods of familial disharmony.

As for factual finding (3), it is pure conjecture that Dolores's statement that she "trusted" Kathleen meant that she trusted Kathleen to divide the accounts equally. While Leo may have stated that he did not want *his* estate probated, it is Dolores's intent that is relevant. In any event, a joint account is simply one way by which a party can avoid probate. The record demonstrates that Dolores understood how the joint accounts would operate upon her death. Dolores could have placed all three of her children on the accounts and still avoided probate, but she chose not to do so. A desire to avoid probate therefore says nothing at all about Dolores's intention to distribute money to the other two children.

As for factual finding (4), whatever promises *Kathleen* might have made to Marlene about the funds in the accounts in no way evidences *Dolores's* intent about how the joint accounts should be distributed.

As for factual finding (5), Kathleen's alleged lack of credibility or dishonesty regarding the accounts is irrelevant to Dolores's intent in creating the joint accounts, especially given that any dishonesty or manipulation occurred after the accounts were formed. Quite simply, even if Kathleen had been willing to subvert Dolores's intent, that willingness would not constitute evidence of Dolores's intent when she placed only Kathleen on the joint accounts.

Finally, as for factual findings (6) and (7), Kathleen's belief regarding to whom the money belonged or hesitation in spending the funds in no way provides evidence of

to overcome the statutory presumption that ownership of the decedent's joint accounts went to the survivor).

Dolores's intent regarding any of her assets.[11] The Court of Appeals confused the knowledge or actions of the survivor with the intent of the accounts' creator.

In sum, I conclude that the evidentiary record in this case in no way supports a determination that reasonably clear and persuasive evidence was presented to overcome the statutory presumption of ownership in the survivor. While the lower courts relied on indirect assumptions and inferences regarding Dolores's intent, the fact that Dolores placed only Kathleen on the joint accounts is strong *direct* evidence of her intent that Kathleen alone possesses the assets of those accounts, especially considering the unambiguous testimony of Dolores's attorney that Dolores understood how joint accounts operate. The vague statements made by Dolores about wanting to divide her property equally carry little weight, especially in light of her clear intent to disinherit Dennis by writing him out of her will less than two months before her death. Plaintiffs insist that Dolores intended to "treat" their children equally, but plaintiffs fail to appreciate that "fair treatment" does not necessarily require an equal distribution of the joint accounts.

By relying on speculative evidence to conclude that Dolores intended the accounts to be shared equally, the lower courts failed to give proper deference to the presumption created by MCL 487.703 and the evidentiary standard of reasonably clear and persuasive proof. This is troubling, because if the statutory presumption in MCL 487.703 can be so easily overcome, the presumption is rendered meaningless, erasing the security and certainty of the rights of a surviving account holder. Indeed, the presumption would be overcome in most disputes in which feuding siblings disagree about the intent of their parents, even if the parents might have placed funds in joint accounts precisely to avoid such disputes.

For these reasons, I agree with defendant that plaintiffs did not provide reasonably clear and persuasive proof to rebut the statutory presumption of ownership set forth in MCL 487.703, and I would therefore peremptorily reverse the judgment of the Court of Appeals and remand this case to the St. Clair County Probate Court for entry of a judgment in favor of the defendant regarding these accounts.

MARKMAN, J., joins the statement of ZAHRA, J.

---

[11] See *Anderson v Lewis*, 342 Mich 53, 60 (1955) (stating that a person's mistaken belief about her rights in the joint account before and after the death of the decedent "cannot change the legal status of the joint account").



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 10, 2016



Clerk

p0607