LEIB *v.* GENESEE MERCHANTS BANK &
TRUST COMPANY.

1. JOINT TENANCY—PRESUMPTION OF OWNERSHIP IN SURVIVOR.
   The statutory presumption of ownership in survivor of funds
   in a joint bank account does not attach, where such account is
   not in form payable to the survivor (CL 1948, § 487.703).

2. BANKS AND BANKING—JOINT ACCOUNT—DEATH OF OWNER OF
   FUND—PAYMENT TO SURVIVOR.
   Evidence presented in action by administrator of estate of 1
   of 2 parties in whose names joint account was opened in de-
   fendant bank against the bank and the other party in whose
   name the account had stood, to recover sum withdrawn from
   the account after death of the owner of the funds on deposit
   *held,* to fail to show any indication of intent to pass title there-
   to to other joint depositor, hence, payment to him after owner's
   death, with knowledge of the ownership of the funds and
   death of the owner, rendered bank liable therefor (CL 1948,
   § 487.703).

3. SAME—JOINT ACCOUNT—SURVIVOR.
   A joint account to the extent of being payable to either does not
   make the account payable to the survivor (CL 1948, § 487.703).

Appeal from Oakland; Beer (William John), J.
Submitted April 2, 1963. (Calendar No. 12, Docket
No. 49,791.) Decided September 4, 1963.

Action by Emmett J. Leib, administrator with the
will annexed of the estate of Emerson L. Gower,
deceased, against Genesee Merchants Bank & Trust
Company, a Michigan banking corporation, and

REFERENCES FOR POINTS IN HEADNOTES
[1] 7 Am Jur, Banks § 425 *et seq.*
[2, 3] 7 Am Jur, Banks § 509.

Robert Gower to secure for the estate funds placed
in joint deposit.   Judgment for plaintiff against
defendant Gower.   Action dismissed as to defendant
bank.   Plaintiff appeals.   Reversed and remanded
for entry of judgment against defendant bank.

*Reese & Parenti* (*Robert V. Parenti,* of counsel),
for plaintiff.

*David C. Pence* (*Ralph A. Becker,* of counsel), for
defendant Genesee Merchants Bank & Trust Company.

O'Hara, J.   Emerson L. Gower in his lifetime was
a customer of the State Bank of Ortonville, Ortonville, Michigan.   On May 13, 1958, accompanied by
his nephew Robert, he called at the bank and established a checking account.   The account was opened
by filling out a signature card in the following form:

"Commercial Signature Card
    Name of Corporation, Firm or Individual
"Gower, E. L. or Robert

"STATE BANK OF ORTONVILLE, Ortonville,
Mich.

    Signatures and by whom made.

"E. L. Gower

"Robert Gower

"12804 Wilshire Det. 13 Mich.

"LA 70149

"Address      1760 Hurd Rd. R#1 Ortonville, Mich.

"Date      May 13 '58.                          "

Both Mr. Gower and his nephew signed the card
at the time.   Mr. Gower withdrew $3,700.58 which
had been on deposit in his own name, and together

with an additional $800 of his, deposited it in the checking account.

From time to time thereafter, through early October, 1959, the uncle made deposits to the account. During this same period, both uncle and nephew drew checks on the account on the single signature of either.

Sometime in 1959, E. L. Gower became ill and moved into his nephew's home for a time and then returned to his own house.

On October 23, 1959, the uncle died. Shortly after his uncle's death, Robert went to the bank and asked a vice-president whether he, Robert, could "close out the account." The bank officer (by then the Ortonville State Bank had merged with defendant-appellee) replied affirmatively. It is not disputed that the bank knew of E. L. Gower's death. The vice-president checked the balance and made out the check for all but $1 of the balance. The nephew signed it and the bank cashed it. The nephew deposited the funds withdrawn in a joint account with his wife in a Detroit bank.

Decedent's administrator brought an action at law in a 2-count declaration against the bank and the nephew. The first count alleged a breach of a depository agreement by the bank failing and refusing to pay to decedent's administrator the funds on deposit on the date of his death ($3,759.46).

Count 2 alleged that the nephew wrongfully converted the same amount to his own use, and that the bank wrongfully and negligently paid the sum to the nephew. A motion for summary judgment was denied and the case went to trial on the discovery depositions of the nephew and the bank vice-president. At the conclusion of the arguments of counsel the court dismissed both counts as to defendant bank and entered judgment for plaintiff ad-

ministrator on the conversion count against the nephew.

From this order plaintiff administrator appeals the dismissal as to the bank. The conversion judgment against the nephew is unappealed.

Prior to the entry of judgment, the following colloquy between court and counsel took place:

"*Mr. Pence:* If your Honor please, there isn't any allegation here that we have violated a contract.

"*The Court:* It is my opinion, and therefore my ruling that this bank would have been guilty of negligence if it had refused to honor the signature of the joint holder. I think the controlling situation of fact here is the existence of an ordinary commercial checking account in which either depositor could check out the funds. If I understand banking law correctly the failure of the bank to respond to the signature which commands payment, that in itself could be negligence.

"*Mr. Parenti:* May I interject this, your Honor, at this point. That the signature is not that of the depositor; that it is conceded that the money belonged to the decedent, and therefore I think there is an important distinction.

"*The Court:* I understand your argument. The incident of death here in my opinion did not alter the situation. The bank is dismissed from the case entirely."

Here we believe "lies the rub." By reason of the court's statements that the "incident of death did not alter the situation" and that the "bank would have been guilty of negligence if it had refused to honor the signature of the joint holder" he, in legal effect, held that every joint account carries with it the right of survivorship.

This we do not understand to be the settled law of our State. First the legislature has spoken in this

regard by the enactment of CL 1948, § 487.703 (Stat Ann 1957 Rev § 23.303). The statute provides:

"When a deposit shall be made, in any bank by any person in the name of such depositor *or* any other person, *and in form to be paid to either or the survivor of them,* such deposits thereupon and any additions thereto, made by either of such persons, \* \* \* shall become the property of such persons as joint tenants, \* \* \* and may be paid to either during the lifetime of both, or to the survivor after the death of 1 of them." (Emphasis supplied.)

This statute contains 2 conditions to be fulfilled before it becomes controlling. First, a deposit must be made by a person in the name of the depositor, *"or"* any other person. This was done in the instant case. The correlative requirement is that the deposit be in a form to "be paid to either *or the survivor of them.*"

In *Betker* v. *Ide,* 335 Mich 291, wherein the instrument read "Ida L. Warner and (&)/or Beatrice Betker," we held at p 296:

"The present case is not such as to come within the statute which applies only to deposits that are made in form to be paid to either *or their survivor.* The statute is for the benefit and protection of both the banks and their depositors. It creates a presumption in favor of survivorship when the joint deposit in form is payable to the survivor. Even had it been so made out such presumption can be rebutted by competent evidence. \* \* \* The statute cannot be invoked in the instant case and it was error so to hold." (Emphasis supplied.)

In affirmation of this holding, 6 years later we said:[*]

---

[*] *Jacques* v. *Jacques,* 352 Mich 127, p 136.

"This statute validates a new method of vesting title to funds. It makes the mere creation of the joint account with the use of the words 'right of survivorship' prima facie evidence of intention to vest title."

Again, the key was the use of the words "or the survivor of either." Quite obviously, the second condition was not met by the instrument here involved and earlier set out.

Since the statutory requirements were not fulfilled, we next inquire whether there was anything else in the instrument itself or in the circumstances surrounding the creation of the joint account which would afford any indication of the intent of the party or parties creating it.

For, as in the case where the requisite form is used, a presumption to vest title is established, without the words the intent of the parties can be founded upon other admissible evidence. The record here is barren of indication of Mr. Gower's intent (and it was his money).

Mr. Schultz, the bank vice-president, testified to what *his* understanding of "or" meant but nowhere is there any evidence of what Mr. Gower's understanding was.

Robert Gower, the nephew, did not have a check book until about a year (the testimony is not definitive) after the account was opened. He testified:

"He [Emerson Gower] sent me out to his house to get the check book so *he* could pay some bills." (Emphasis supplied.)

Fairly read, and in the absence of misapplication of the involved statute, no inferences can be drawn from the testimony that support an intent "to transfer title" in the language of *Jacques, supra.*

It would appear that the logical error here present is syllogistic. The trial court postulates every

deposit in the name of a depositor "or" another; or "either" of the depositors creates a joint account. Every joint account carries the right of survivorship. Ergo, the account herein carried the right of survivorship.

The minor premise is false. An account may be joint during the lifetime of the parties without *ipso facto* carrying the right of survivorship. We so held in *Peoples State Bank of Belleville* v. *Allstaedt,* 301 Mich 662. Justice WIEST thus stated the proposition at p 664:

"If we hold the letter [*i.e.* the signature card here] accomplished the purpose of making a joint account *to the extent of being payable to either,* it did not, under the statute [as the trial court held], make the account payable to the survivor." (Emphasis supplied.)

We have examined the other propositions urged but we are satisfied that the foregoing settled law obtains. It follows that the order dismissing as to defendant bank must be reversed. So it is. The case is remanded with instructions to enter judgment against defendant Genesee Merchants Bank & Trust Company in the amount withdrawn from the account on the signature of Robert Gower after the death of Emerson L. Gower. Appellant may have costs.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and SMITH, JJ., concurred.