# STATE OF MICHIGAN

# COURT OF APPEALS

---

Estate of STANLEY MORRIS,

Plaintiff-Appellant,

v

MARY MORRIS,

Defendant-Appellee.

UNPUBLISHED
August 11, 2016

No. 326507
Oakland Probate Court
LC No. 2013-350325-CZ

---

Before: MURPHY, P.J., and STEPHENS and BOONSTRA, JJ.

PER CURIAM.

Plaintiff, the Estate of Stanley Morris, appeals as of right the trial court's order granting defendant's motion for involuntary dismissal pursuant to MCR 2.504(B)(2). We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

The decedent, Stanley Morris, was the father of four children: (1) Mel, who served as the personal representative of the decedent's estate, (2) defendant, (3) John Christopher "Chris" Morris, and (4) Robert Morris. In 2002, the decedent executed a will that distributed his estate equally among his four children. The decedent's most significant asset was his home in Livonia. The decedent sold his home in 2006 and deposited the proceeds into one of his accounts with Bank of America (BoA). Mel was listed as a joint owner of the decedent's BoA accounts. According to Mel, he was named as a joint owner of the BoA accounts for the decedent's convenience. Mel never used the account funds for his own purposes, and he considered the funds the property of the decedent. Defendant was later added as a joint owner of the BoA accounts. Defendant's name began to appear on the account statements in March or April 2007, but the documents making her a joint owner of the accounts were never produced. Mel produced a signature card dated October 17, 2008, but the card does not provide any information about defendant's status as a joint account owner.

From April 2007 until the decedent's death in June 2011, defendant depleted the funds in the BoA accounts. Defendant does not deny that the funds were used mostly to pay expenses or make purchases for herself and her daughter, but she contends that she was authorized to do so because she was a joint owner of the accounts and that she had decedent's permission to make purchases for her and her daughter's benefit. Plaintiff brought this action for conversion, fraud, and related torts arising from defendant's use of the funds. The case proceeded to a bench trial.

-1-

After plaintiff rested, the trial court granted defendant's motion for involuntary dismissal, stating:

> . . . I am going to grant the motion to dismiss the case. I do agree with [defense counsel] that the plaintiff has not met his burden of proof. You did not present any evidence that would rebut the presumption of a joint account, you did not provide any of – there's no evidence submitted or supported by testimony of a breach of a fiduciary duty, conversion, misrepresentation, silent fraud, negligence, account of convenience or undue influence.

> And moreover, with regard to your argument about the Will that says split the home four ways, that Will was in 2002. That doesn't mean anything. He could spend – he could have sold it in 2003 and spent it completely by 2004. How would that change things, the money's not there?

> But that's not the point. The point is, and while – perhaps everything alleged is true, you have not met your burden of proof, and therefore, I'm going to dismiss this case.

## II. STANDARD OF REVIEW

In reviewing a motion for involuntary dismissal pursuant to MCR 2.504(B)(2), this Court reviews issues of law de novo, and reviews findings of fact for clear error. *Sands Appliance Servs, Inc v Wilson,* 463 Mich 231, 235-236 n 2, 238; 615 NW2d 241 (2000). A plaintiff is not afforded the advantage of the most favorable interpretation of the evidence, but rather the trial court is called upon to act as a trier of fact. *Marderosian v Stroh Brewery Co,* 123 Mich App 719, 724; 333 NW2d 341 (1983). Questions involving the construction of a statute are reviewed de novo. *City of Huntington Woods v City of Oak Park,* 311 Mich App 96, 108; 874 NW2d 214 (2015).

## III. MRE 803(3)

Plaintiff initially argues that the trial court improperly considered defendant's testimony concerning the decedent's statements made after her name was added to the BoA accounts. Relying on *In re Cullmann Estate,* 169 Mich App 778, 788; 426 NW2d 811 (1988), plaintiff argues that the decedent's statements were inadmissible hearsay, and were not admissible under the state of mind hearsay exception in MRE 803(3) because they were made after defendant was added as a joint owner of the accounts. Because there was no objection to the challenged testimony at trial, this issue is unpreserved and review is limited to plain error affecting plaintiff's substantial rights. MRE 103(a)(1); *King v Oakland Co Prosecutor,* 303 Mich App 222, 239; 842 NW2d 403 (2013).

Defendant testified generally about the decedent's intent to disinherit her brothers as retaliation for them interfering with his driving privileges, but this testimony did not involve statements by the decedent regarding the establishment of a joint account. The only testimony defendant gave regarding a statement by the decedent relating to the joint accounts was that defendant sometimes asked the decedent if she could use money for a particular purpose and he eventually told her, "Sweetheart, you don't have to keep asking me." This testimony was offered

in response to questions by plaintiff's counsel on direct examination. Because plaintiff affirmatively elicited this testimony, plaintiff cannot now argue on appeal that the testimony constitutes error requiring reversal. See *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998) (holding that a party "should not be allowed to assign error on appeal to something his own counsel deemed proper at trial").

## IV. PRESUMPTION OF OWNERSHIP AND SURVIVORSHIP IN JOINT ACCOUNTS

Plaintiff argues that the trial court erred in granting defendant's motion for involuntary dismissal on the basis of its determination that plaintiff failed to rebut the presumption that defendant was a joint owner of the accounts, and entitled to use of the funds therein.

A motion for involuntary dismissal is governed by MCR 2.504(B), which provides, in pertinent part:

> (2) In an action, claim, or hearing tried without a jury, after the presentation of the plaintiff's evidence, the court, on its own initiative, may dismiss, or the defendant, without waiving the defendant's right to offer evidence if the motion is not granted, may move for dismissal on the ground that, on the facts and the law, the plaintiff has no right to relief. The court may then determine the facts and render judgment against the plaintiff, or may decline to render judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in MCR 2.517.

Unlike a motion for a directed verdict in a jury trial, when deciding a motion for involuntary dismissal, the trial court must exercise its "function as trier of fact, weigh the evidence, pass upon the credibility of witnesses and select between conflicting inferences." *Williamstown Twp v Hudson*, 311 Mich App 276, 287; 874 NW2d 419 (2015) (citation and quotation marks omitted). Here, the trial court did not base the order of dismissal on findings that defendant was more credible than plaintiff's witnesses. The trial court's statement that "perhaps everything alleged is true, [but] you have not met your burden of proof, and therefore, I'm going to dismiss this case" indicates that the court dismissed the case based on the insufficiency of plaintiff's proofs, rather than on factual findings in defendant's favor.

Plaintiff contends that defendant's use of the funds in the decedent's accounts constitutes conversion, entitling plaintiff to imposition of a constructive trust and to treble damages for statutory conversion under MCL 600.2919a. Conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015) (citations and quotation marks omitted). MCL 600.2919a provides

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

> (a) Another person's stealing or embezzling property or converting property to the other person's own use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

Statutory conversion is distinct from common-law conversion in that statutory conversion also requires proof that the property was stolen, embezzled, or converted for the tortfeasor's own use. MCL 600.2919a(1)(a); *Aroma Wines*, 497 Mich at 358-359. "An action for the conversion of bank account funds . . . can be maintained only if there was an obligation on the defendant's part to return or deliver the specific money entrusted to it." *Check Reporting Servs, Inc v Mich Nat'l Bank-Lansing,* 191 Mich App 614, 626; 478 NW2d 893 (1991). " 'The defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship.' " *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111; 593 NW2d 595 (1999) quoting *Citizens Ins Co v DelCamp Truck Ctr, Inc*, 178 Mich App 570, 575; 444 NW2d 210 (1989). Because the holder of a joint account may withdraw the entire account, *Dep't of Treasury v Comerica Bank*, 201 Mich App 318, 325; 506 NW2d 283 (1993), an action for conversion requires the defendant to have obtained the money without the owner's consent and includes an obligation to return the money entrusted to the defendant's care, *Citizens Ins Co*, 178 Mich App at 575. "Although an action cannot be maintained for conversion of money unless there is an obligation on the part of the defendant to return the specific money entrusted to his care, . . . it is not necessary that the money should be specifically earmarked for its return." *Id*.

Thus, if defendant was a lawful joint owner of the accounts, with rights to withdraw funds during the decedent's life and to receive the funds as survivor, she cannot be liable for conversion of the funds in the accounts. Conversely, if she was not a lawful owner, then she used the funds without authorization, and was obligated to return the funds to the estate. The undisputed evidence that defendant used the funds for her own use would satisfy the additional element of statutory conversion.

Defendant argues that she was a joint owner of the accounts, and therefore entitled to the presumption that she had rights of ownership to funds in the account before and after the decedent's death. A statutory joint bank account may be established under the statutory joint account act, MCL 487.711 *et seq.* Section 5 of the act, MCL 487.715, provides the form of the "statutory joint account contract," which requires completion of eight items, including the names and addresses of persons designated as owners, A and B. The persons opening the account must designate "[w]ho may withdraw funds during the lifetime of A and B," who may revoke the contract, who "owns the funds during the lifetime of A and B," who "owns the funds and has the right to withdraw if A dies first," who "owns the funds and has the right to withdraw if B dies first." MCL 487.716 provides:

The creation of a statutory joint account is a contract as to ownership of the deposits and is effective pursuant to its terms without regard to requirements

of testamentary dispositions. The rights of persons in joint accounts which are not statutory joint accounts are not affected by this act. The failure to answer a question in a statutory joint account contract shall not invalidate the contract, but it shall be enforceable pursuant to its terms as to the questions answered and pursuant to the common law as to any unanswered question or ambiguities, with the purpose of effectuating the intent of the parties.

There was no evidence that the decedent entered into a contract meeting the requirements imposed by MCL 487.715. Plaintiff states in its brief:

While the bank statements did change to include Mary's name on the April 2007 statement, BOA certified through discovery that no statutory account contract existed, and the BOA signature card (Tab CC) showed that Mary was added as an account holder on October 31, 2008, not in March 2007 as Mary claimed.

However, the signature card was not admitted into evidence at trial. The BoA affidavit certifying the authenticity of records produced made no mention of the existence or non-existence of a statutory account contract. In the absence of any evidence that the decedent created a statutory joint account pursuant to the joint account act, we must conclude that the joint account act does not apply here.

With respect to defendant's argument regarding the statutory presumption for joint ownership and survivorship of bank accounts, MCL 487.703 provides:

When a deposit shall be made, in any bank by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of 1 of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof.

When a deposit has been made, or shall hereafter be made, in any banking institution transacting business in this state, in the names of 2 or more persons, payable to either or the survivor or survivors, such deposit or any part thereof or any interest or dividend thereon and any additions thereto, made by any 1 of the said persons, shall become the property of such persons as joint tenants, and the same shall be held for the exclusive use of the persons so named and may be paid to any 1 of said persons during the lifetime of said persons or to the survivor or survivors after the death of 1 of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made

-5-

on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof.

The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors. [Emphasis added.]

"Michigan's joint ownership statute regarding bank accounts provides that a deposit made in a jointly held bank account with the right of survivorship, in the absence of fraud or undue influence, is prima facie evidence of the depositor's intention to vest title to the deposit in a surviving joint owner." *In re Cullmann Estate*, 169 Mich App at 786, citing MCL § 487.703; see also *Jacques v Jacques,* 352 Mich 127, 134-138; 89 NW2d 451 (1958), and *Traverse City State Bank v Schuler*, 29 Mich App 518; 185 NW2d 558 (1971). "This presumption can, however, be rebutted by reasonably clear and persuasive proof to the contrary, i.e., by proof of the decedent's intent that title to the jointly held funds not vest in the survivor." *In re Cullmann Estate*, 169 Mich App at 786.

An analysis of the language in MCL 487.703 is necessary to determine plaintiff's burden of proof in this case. "The fundamental goal when construing a statute is to determine and give effect to the intent of the Legislature, with the presumption that unambiguous language should be enforced as written." *City of Huntington Woods*, 311 Mich App at 108 (citation and quotation marks omitted). "The provisions of a statute should be read reasonably and in context. . . . Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of the statute." *Id*. (citation and quotation marks omitted). This Court may consider dictionary definitions in determining the meaning of terms not defined by the Legislature. *Autodie, LLC v City of Grand Rapids*, 305 Mich App 423, 434; 852 NW2d 650 (2014).

The first sentence (and also the first paragraph) of MCL 487.703 begins with a subordinate clause: "When a deposit shall be made . . . in form to be paid to either or the survivor of them . . . ." This use of the word "when" in the context of the clause fits the dictionary definition "in the event that: IF." *Merriam-Webster's Collegiate Dictionary* (11th ed). This subordinate clause sets a condition that must be met before the independent clauses take effect. The first independent clause states: "such deposits . . . and any additions . . . shall become the property of such persons as joint tenants . . . ." The second independent clause states "the same [i.e., deposits] . . . shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor . . . ." The third independent clause relieves the bank of liability in regard to payments to the joint owner. The structure of the first sentence of the first paragraph thus sets a condition, namely the creation of a deposit "in form to be paid to either or the survivor" and then states the results of meeting that condition, namely that the deposits "shall become the property of such persons as joint tenants" and the deposits "shall be held for the exclusive use" of the owners and the deposits "may be paid to either during the lifetime of both . . . ."

The second sentence (and second paragraph) of MCL 487.703 repeats the structure of the first sentence and paragraph. It begins with a subordinate clause, "When a deposit has been made . . . in the names of 2 or more persons, payable to either or the survivor," which states a condition, namely making a deposit in the names of two or more persons that is payable to either or the survivor. The first independent clause then states that "such deposits . . . shall become the property of such persons as joint tenants." The second independent clause states "the same [deposits] shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of one of them." The last independent clause relieves the bank of liability for payments of the deposits in accordance with joint ownership.

The first paragraph, read as a whole, states that when joint depositors create a deposit account in the form that it is payable to either or the survivor, the deposits (along with additions to the deposit and interest accruing from the account) become the property of both or all of the depositors as joint tenants. The deposits/funds in the account may then be paid to any of the depositors while they are alive, and may be paid to the survivor or survivors after one of the joint owners dies. The second paragraph follows this form and applies it to "any banking institution transacting business in the state." Both paragraphs impose a condition, namely the creation of an account with the requisite language. When this condition is met, ownership of the account as joint tenants takes effect. The creation of the joint tenancy allows any of the depositors to receive payment of funds from the account, and to take ownership of the funds upon the death of the other depositors. However, joint tenancy does not occur unless the prescribed language of survivorship is included when the account is made.

The third sentence (and third paragraph) states an additional consequence flowing from the creation of a joint account as described in the first and second sentence and paragraph. "The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence . . . of the intention of such depositors to vest title to such deposit . . . in such survivor or survivors." The subject of this sentence is the gerund "making," which is modified by the prepositional phrase "of the deposit," which itself is modified by the prepositional phrase "in such form." The subject phrase, "making of the deposit in such form" is followed by the linking verb "shall . . . be," modified by the prepositional phrase "in the absence of fraud or undue influence." The linking verb is followed by the predicate nominative "prima facie evidence, in any action or proceeding, to which . . . surviving depositor . . . is a party, of the intention of such depositors to vest title to such deposit . . . in such survivor . . . ." Reading the third sentence as a whole, in the context of the entire statute, the third sentence states that creating a deposit account in the prescribed form (i.e., payable to survivor) establishes prima facie evidence that the depositors intended to vest title to the survivor, unless there is absence of fraud or undue influence. In other words, the prima facie evidence of rights of survivorship does not occur in the creation of any or all joint accounts, but only joint accounts made according to the "payable to either or the survivor" language in the first and second paragraphs.

This Court has regarded MCL 487.703's presumption of survivorship as justification also for a joint account owner's withdrawal of funds before the other owner's death. In *In re Cullmann Estate*, 169 Mich App 778, the decedent Cullman created two bank accounts with the respondent Jedd. Jedd withdrew the funds from the joint accounts, and closed them, one month before Cullman's death. *Id*. at 780-781. This Court concluded that Jedd was entitled to

withdraw the funds because the petitioner estate failed to prove that the decedent did not intend to vest title in Jedd if Jedd were the surviving owner. *Id*. at 786-787.

MCL 487.703 does not provide that all joint accounts carry the presumption of joint ownership and survivorship; it provides this presumption only when the deposit is made in the prescribed form. We conclude that this language, properly interpreted, required evidence that the decedent created the joint account with the intent to convey to defendant joint ownership and right of survivorship before the presumption of joint ownership and survivorship could arise. In the absence of such proof, there can be no prima facie evidence to rebut, and the ordinary standard of proof for civil cases, preponderance of the evidence, governs the outcome. In that situation, plaintiff could prevail by proving by a preponderance of the evidence that the decedent did not intend for ownership to vest in defendant.

This interpretation is consistent with *Leib v Genesee Merchants Bank & Trust Co*, 371 Mich 89; 123 NW2d 140 (1963). In that case, an uncle and nephew opened a joint checking account with the defendant bank. After the uncle's death, the nephew closed the account, withdrew the funds, and deposited the funds into a joint account he held with his wife. *Id*. at 91. The plaintiff administrator of the uncle's estate brought an action against the bank for breach of the depository agreement by failing to pay the funds to the decedent's administrator, and an action against the nephew for conversion. *Id*. The trial court dismissed the counts against the bank, but entered judgment against the nephew. *Id*. at 91-92. The trial court believed that the bank had a duty "to respond to the [nephew's] signature which commands payment" and that "[t]he incident of death did not alter the situation." *Id*. at 92. On appeal, the Supreme Court criticized the trial court for implicitly holding "that every joint account carries with it the right of survivorship." *Id*. Citing MCL 487.703, the Court stated:

> When a deposit shall be made, in any bank by any person in the name of such depositor *or* any other person, *and in form to be paid to either or the survivor of them*, such deposits thereupon and any additions thereto, made by either of such persons, * * * shall become the property of such persons as joint tenants, * * * and may be paid to either during the lifetime of both, or to the survivor after the death of 1 of them. [*Leib*, 371 Mich at 93.]

The Court commented that the statute requires satisfaction of two conditions to become controlling: "First, a deposit must be made by a person in the name of the depositor, '*or*' any other person. This was done in the instant case. The correlative requirement is that the deposit be in a form to 'be paid to either *or the survivor of them*.' " *Id*. The Court concluded that because of the failure to meet the statutory requirement of including "or the survivor of either" language, there was no presumption favoring survivorship. *Id*. at 93-94. However, the Court's analysis did not end there. After concluding that the statutory requirements were not met, the Court "next inquire[d] whether there was anything else in the instrument itself or in the circumstances surrounding the creation of the joint account which would afford any indication of the intent of the party or parties creating it." *Id*. at 94. The Court stated, "as in the case where the requisite form is used, a presumption to vest title is established, without the words the intent of the parties can be founded upon other admissible evidence." *Id*. The Court noted, however, that "[t]he record here is barren of indication" of the uncle's intent, and further noted that "it was his money" deposited when the joint account was opened. *Id*. The Court concluded that absent

-8-

the requisite language regarding "right of survivorship," and absent evidence of the uncle's intent, the account was not payable to the nephew on the uncle's death. *Id.* at 95.

Similarly, in *Jacques, supra,* the plaintiff, John Jacques, alleged that his brother and sister-in-law, Raphael and Jane Jacques, had a duty to account, as constructive trustees, for funds that Jane withdrew from the decedent's bank account. The decedent originally opened the account, and later added Jane Jacques as a joint holder. *Id.* at 128. The trial court dismissed the plaintiffs' complaint pursuant to the statutory presumption of survivorship in a joint bank account. *Id.* at 129. On appeal, the plaintiff argued that he presented sufficient evidence to rebut the statutory presumption. *Id.* The plaintiff argued that the bank account was made joint only for the decedent's convenience, and that the account therefore was an asset belonging to the decedent's estate. *Id.* at 130. The Supreme Court reviewed the statutory language and noted that the statute creates a presumption of joint ownership unless competent evidence defeats the presumption. *Id.* at 135-136. The Court rejected the plaintiffs' argument that "the establishment of such a joint bank account with right of survivorship creates merely a rebuttable presumption, therefore, when any contrary evidence is presented, the presumption disappears and many [sic] not be weighed in the balance against such evidence." *Id.* at 135-136. The Court held:

> The logical effect of such a rule would be, in the event of any evidence contrary to an intention to vest title in a survivor, to force the survivor to prove his title to the bank account as if the statute had never been passed, and in accordance with the common-law rules pertaining to gifts *inter vivos*.

> We do not read the statute this way. Nor do we think Michigan's case law can properly be interpreted as appellant urges. As noted, this statute validates a new method of vesting title to funds. It makes the mere creation of the joint account *with the use of words 'right of survivorship'* prima facie evidence of intention to vest title. [*Id.* at 135-136 (emphasis added).]

In *Mineau v Boisclair,* 323 Mich 64; 34 NW2d 556 (1948), the administrator of the decedent's estate sued the defendant for a sum of money that the defendant withdrew after the decedent's death from an account jointly held by the defendant and the decedent. *Id.* at 67-68. The Supreme Court held that the question whether the defendant wrongfully withdrew money from the joint account was properly submitted to the jury because the plaintiff presented evidence to rebut the prima facie evidence that the joint account was created with the intention of vesting title in the survivor. The evidence consisted of testimony by two witnesses, the plaintiff and her daughter, that the "deposit in the bank was made in the joint names of [the decedent] and defendant solely as a matter of convenience in the withdrawal of money from the account." *Id.* at 70.

We conclude from the analysis of the statutory language and *Leib, Jacques,* and *Mineau* that a person contesting an alleged co-owner's right of ownership and survivorship is not required to rebut the presumption of ownership and survivorship by proof of fraud or undue influence until the person claiming rights of ownership and survivorship establishes that the conditions provided in MCL 487.703 were satisfied. In the instant case, neither of the parties produced evidence of the documents that gave effect to defendant's joint ownership of the BoA accounts. Defendant relied on the account statements listing her name along with the decedent

and Mel's names, beginning in April 2007. These documents provide no information relating to the presence or absence of the requisite language of survivorship when defendant's name was added to the accounts. Plaintiff relies on the signature card, dated October 17, 2008. However, this card was not entered into evidence at trial; moreover, the card does not indicate any connection between the printed date and the addition of defendant as a joint owner. Plaintiff states that BoA "certified that no statutory account contract existed" in regard to defendant's status as a joint holder of the decedent's bank accounts. However, plaintiff's exhibits do not include any certification by BoA that the "account contract" does not exist. The only exhibit relating to certification by BoA is an affidavit from BoA certifying the authenticity of the records produced by BoA. This affidavit was not an exhibit at trial. Consequently, there is no documentary evidence to confirm either the presence or absence of the survivorship language in the documents creating the joint accounts with defendant as a joint owner. Accordingly, there is no presumption of joint ownership with rights of survivorship. The trial court erred when it stated that plaintiff did not present evidence "that would rebut the presumption of a joint account." Rather, the trial court should have weighed the conflicting evidence regarding the decedent's intent in creating the joint account.

Mel testified that when the decedent made him a joint owner of the BoA accounts, it was his understanding that he was permitted to write checks only for purposes of helping the decedent manage his affairs. Mel used the account to pay contractors he hired to prepare the decedent's home for sale. He did not withdraw funds for his own purposes. Mel's testimony supports an inference that the decedent added Mel as a joint owner for purposes of convenience, and also an inference that this was his intent in adding defendant as a joint owner. Defendant testified that the decedent told her to use the money in the accounts however she wanted to because he did not want his sons to receive his money. When she asked the decedent for permission to use the accounts, he told her that she did not have to ask. However, defendant made other inconsistent statements regarding the account. When she used the money to make her mortgage payments, she considered it a loan to herself. She referred to the $73,000 house sale proceeds as her father's money. Defendant's testimony also raised the question of why the decedent would allow his assets to be depleted before his death.

Additionally, although the trial court never ruled on the judicial estoppel issue concerning defendant's bankruptcy disclosures, defendant's failure to amend her asset schedule to include the accounts is evidence of her belief that the funds did not belong to her. The decedent's failure to remove Mel from the accounts is also relevant evidence of the decedent's intentions. Continuing Mel's status as a joint owner was entirely inconsistent with the decedent's alleged intent to keep his money out of his sons' hands.

The trial court, as the finder of fact, was responsible for weighing the witnesses' testimony and deciding the credibility contest between Mel and defendant. The trial court's statement that "perhaps everything alleged is true, you have not met your burden of proof," indicates that the court did not make a determination of the witnesses' credibility. The court granted involuntary dismissal because it believed that plaintiff did not meet its burden of proof to rebut the presumption of a joint account. The trial court's focus on rebuttal of the presumption was erroneous. The proper inquiry was whether plaintiff proved that the decedent did not intend for ownership of the funds to vest in defendant. Plaintiff's evidence was sufficient to support an

inference that he did not. Consequently, we remand this case to the trial court for reconsideration, without applying a presumption of joint ownership.

Plaintiff argues that it is entitled to imposition of a constructive trust in addition to monetary damages. "A constructive trust may be imposed where such trust is necessary to do equity or to prevent unjust enrichment." *Kammer Asphalt Paving Co, Inc v East China Twp Schools*, 443 Mich 176, 188; 504 NW2d 635 (1993) (citation and quotation marks omitted). "[S]uch a trust may be imposed when property has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property." *Id*. (citation and quotation marks omitted). If the trial court finds on remand that defendant wrongfully used the funds in the joint bank accounts, it may impose a constructive trust as appropriate to prevent unjust enrichment.

We therefore reverse the portion of the trial court's order dismissing plaintiff's claim for conversion and remand for further proceedings. Because plaintiff did not appeal the trial court's dismissal of its claims for fraud, misrepresentation, silent fraud, and breach of fiduciary duty, our analysis does not apply to those claims.

## V. PLAINTIFF'S ADDITIONAL ARGUMENTS REGARDING JOINT ACCOUNTS

Plaintiff further argues that the trial court erred in disregarding the decedent's will as evidence of the decedent's intent to distribute his estate equally among his four heirs. We find no error. The decedent's will was executed in 2002, four years before his residence was sold and before the decedent and Mel had a falling out over the restrictions placed on the decedent's driving privileges. Although the decedent never revoked the will, the status of his estate changed markedly when the house was sold and the proceeds deposited into an account that the decedent held jointly with Mel, and later with defendant.

Plaintiff also argues that Mel's status as a joint account owner is evidence that the decedent did not intend to vest ownership of the accounts in defendant. As explained earlier, Mel's status is evidence that the trial court may consider on remand in determining the decedent's intent as to the joint accounts.

## VI. UNDUE INFLUENCE

Plaintiff lastly argues that the trial court erred in finding that it failed to present evidence giving rise to a presumption of undue influence. A presumption of undue influence arises upon a showing that (1) there existed a confidential or fiduciary relationship between a grantor and a fiduciary, (2) the fiduciary or an interest that he represented benefited from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in the transaction. *In re Karmey Estate*, 468 Mich 68, 73; 658 NW2d 796 (2003). Once this presumption is created, the burden of going forward with contrary evidence shifts to the person contesting the claim of undue influence. *In re Mikeska Estate*, 140 Mich App 116, 121; 362 NW2d 906 (1985). However, the burden of persuasion remains with the contestant. *Id.*

In *In re Karmey Estate*, 468 Mich at 74 n 2, our Supreme Court, quoting *Black's Law Dictionary* (7th ed), observed that a "fiduciary relationship" is

-11-

[a] relationship in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship. Fiduciary relationships-such as trustee-beneficiary, guardian-ward, agent-principal, and attorney-client-require the highest duty of care. Fiduciary relationships [usually] arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.

Regarding the first situation, there was no evidence that the decedent placed his trust in defendant's "faithful integrity." There was evidence that the decedent favored defendant over his other three children because of the driving controversy, but no evidence that he placed his trust in defendant's management of his finances to the extent that she gained superiority or influence over him. There was no evidence that defendant assumed control and responsibility over the decedent. The decedent did not live with defendant until June 2010, three years after she began using the funds in the BoA accounts. The decedent was not isolated from other family members. Mel testified that he continued to visit the decedent and take him out for coffee while he resided at the Manoogian Manor, and when he moved in with defendant. Defendant did not assume a duty to advise the decedent on financial matters. Regarding the existence of a specific relationship involving fiduciary duties, defendant did not use the power of attorney to gain access to the decedent's accounts. Defendant gained access to his accounts in March or April 2007, before the decedent granted her power of attorney on October 31, 2007.

Plaintiff argues that a fiduciary relationship existed between defendant and the decedent because the decedent was mentally incapacitated by dementia. Evidence of a caregiver relationship with an incapacitated person is relevant to determining whether a fiduciary or confidential relationship exists for purposes of a presumption of undue influence. For example, in *In re Leone Estate*, 168 Mich App 321, 325; 423 NW2d 652 (1988), this Court held that there was evidence of a fiduciary relationship between a mother and son where the mother had poor eyesight, the son lived with his mother all her life, and the son "took care of her needs and ran errands for her." Although defendant arguably acted as the decedent's caregiver during the last year of his life, when they lived in the same apartment, there was no evidence of a caregiver relationship before June 2010. There also was no specific evidence regarding the decedent's mental capacity. Mel testified that the decedent was diagnosed with dementia, and that he received brain surgery, but plaintiff did not present any evidence regarding the decedent's ability to understand the transactions of deposits and withdrawals from his accounts.

The evidence did show that defendant benefited from her transactions with the BoA accounts. A trier of fact could also infer that defendant had the opportunity to influence the decedent when he was estranged from Mel after the driving controversy, and while he lived with defendant. But given the absence of evidence that the decedent's decisions were the result of defendant's undue influence, the trial court did not clearly err in rejecting plaintiff's claim that defendant exercised undue influence over the decedent in order to gain access to his accounts.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra