*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ESTATE OF ELDON KNOBLOCK.

---

KELLY BUSBY, Personal Representative of the
ESTATE OF ELDON KNOBLOCK,

        Petitioner-Appellee,

v

CONSTANCE SUE KIEHL,

        Respondent-Appellant.

UNPUBLISHED
April 21, 2022

No. 356451
Huron Probate Court
LC No. 20-041973-DE

---

Before: JANSEN, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Appellant, Constance Sue Kiehl, appeals as of right the probate court order granting a petition to release joint bank account funds in favor of appellee, Kelly Busby, the personal representative of the Estate of Eldon Knoblock. We affirm.

## I. FACTUAL BACKGROUND

In December 1982, while married, Knoblock and Kiehl opened a joint bank account. They divorced in May 1992. The judgment of divorce did not specifically address the account. It did, however, state that Knoblock was "the sole owner of any and all personal property . . . presently in his possession." The judgment of divorce also included the following provision:

> **IT IS FURTHER ORDERED AND ADJUDGED** that each party shall hold as their sole and separate property, free and clear from any claim thereto by the other, any property whether real, personal, or mixed, which each shall have in his or her possession or which shall acquire in his or her individual capacity on or after the date of this agreement.

As of December 31, 1992, the balance of the account was $1,481.17. Knoblock passed away on March 27, 2020. Kiehl testified that she did not use the account after the divorce, and did not know that her name was on the account until after Knoblock died.

In December 2020, Busby filed a petition in the probate court explaining that the bank refused to release the account's funds, asserting that Kiehl refused or neglected to remove her name from the account, and asked the court to determine whether the account was Knoblock's sole property. In her answer, Kiehl urged the court to deny the petition on the ground that MCL 487.703 established the presumption that the account belonged to her as its surviving owner.

During the hearing on the petition, the president of the bank where the account was held testified that, according to the bank's records, which included the account's "signature card," the account was "a joint account" from which Knoblock did not remove Kiehl after the divorce. He also reported that the account's balance was approximately $144,000 at the time of the hearing, and confirmed that Kiehl had not been in touch with the bank before Knoblock's death and had contributed nothing to the account since the divorce.

The probate court found that Kiehl and Knoblock intended to create an "estate" of "joint tenants with rights of survivorship" when they opened the account, but that "the divorce was intended to terminate any rights of survivorship that either party [had] in the accounts of each other." The probate court observed that the judgment of divorce included a property settlement that was intended to address all of Knoblock's and Kiehl's property, but did not address the account or otherwise "discuss what happens in a joint account situation." The court further noted that the balance of the account in December 1992 was $1,481.17, that the pertinent bank statement was sent to only Knoblock, and that Kiehl did not use, or even know of, the account.

The probate court held that "the additional balance after that was contributed by [Knoblock], by him alone, without her knowledge, without her contribution, without any withdrawals being made by her, or any former claim of ownership and that existed from 1992 to today's date almost 30 years." Therefore, Kiehl did not have interest in the account. The court explained that this aspect of its ruling was "based on the fact that . . . the only party that was represented in the divorce judgment was [Kiehl]," that the judgment of divorce was "prepared by her attorney," and that if "there was ambiguity in the judgment, it gets construed against the party who had control of it." The court added that "if there was an omission, it still gets ruled against [Kiehl] in that situation." The probate court determined that "there was an oversight of $1481.17" in the judgment of divorce, and ruled that Kiehl was "entitled to one-half of that balance." The court held that "the remaining sums" from the account were "the sole and absolute property of the decedent." This appeal followed.

## II. STANDARDS OF REVIEW

"Whether a lower court has subject-matter jurisdiction is a question of law that this Court reviews de novo." *Maple Manor Rehab Ctr, LLC v Dep't of Treasury*, 333 Mich App 154, 162; 958 NW2d 894 (2020).

"This Court reviews for clear error the probate court's factual findings and reviews de novo its legal conclusions." *In re Brody Conservatorship*, 321 Mich App 332, 336; 909 NW2d 849

(2017). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (quotation marks and citation omitted). "We defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *Lewis Estate v Rosebrook*, 329 Mich App 85, 93; 941 NW2d 74 (2019) (quotation marks and citation omitted).

"Generally, this Court reviews de novo '[t]he interpretation of statutes and court rules.' " *Simcor Constr, Inc v Trupp*, 322 Mich App 508, 513; 912 NW2d 216 (2018) (citation omitted; alteration in original).

"Consent judgments of divorce are contracts and treated as such." *Andrusz v Andrusz*, 320 Mich App 445, 452; 904 NW2d 636 (2017). "We review de novo as a question of law the proper interpretation of a contract, including a trial court's determination whether contract language is ambiguous." *Id*. "Whether a grant of equitable relief is proper under a given set of facts is a question of law that this Court also reviews de novo." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371; 761 NW2d 353 (2008).

### III. SUBJECT-MATTER JURISDICTION OF THE PROBATE COURT

Kiehl contends that the probate court lacked jurisdiction to amend the judgment of divorce, or decide matters of marital property division. We hold that the probate court neither amended the judgment of divorce nor divided marital property.

"Jurisdiction is the power of a court to act and the authority of a court to hear and determine a case." *In re AMB*, 248 Mich App 144, 166; 640 NW2d 262 (2001) (quotation marks and citation omitted). "Courts are not permitted to enlarge or diminish the jurisdiction conferred by statute or the constitution." *In re Complaint of Knox*, 255 Mich App 454, 458; 660 NW2d 777 (2003). "Subject-matter jurisdiction is the right of the court to exercise judicial power over a class of cases, not the particular case before it." *Teran v Rittley*, 313 Mich App 197, 205; 882 NW2d 181 (2015) (quotation marks and citation omitted). "It is the abstract power to try a case of the kind or character of the one pending, but not to determine whether the particular case is one that presents a cause of action or, under the particular facts, is triable before the court in which it is pending." *Id*. (quotation marks and citation omitted). If a court lacks subject-matter jurisdiction "the action is void because of its want of jurisdiction," and a court's jurisdiction "may be questioned collaterally as well as on direct appeal." *Altman v Nelson*, 197 Mich App 467, 472-473; 495 NW2d 826 (1992). "Subject-matter jurisdiction is so critical to a court's authority that a court has an independent obligation to take notice when it lacks such jurisdiction, even when the parties do not raise the issue." *In re AMB*, 248 Mich App at 166-167. "[S]ubject-matter jurisdiction is established by the *pleadings* and exists when the proceeding is of a class the court is authorized to adjudicate and the claim stated in the complaint is not clearly frivolous." *Clohset v No Name Corp*, 302 Mich App 550, 561; 840 NW2d 375 (2013) (quotation marks and citation omitted).

The probate court "is a court of limited jurisdiction, deriving all of its power from statutes." *Manning v Amerman*, 229 Mich App 608, 611; 582 NW2d 539 (1998). Accordingly, "[t]he jurisdiction of the probate court must be determined solely by reference to the statutes." *In re*

*Mayfield*, 198 Mich App 226, 230; 497 NW2d 578 (1993). MCL 600.841(1)(a) provides that the probate court has jurisdiction and authority as conferred upon it under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. MCL 700.1302(a) provides, in relevant part:

> The [probate] court has exclusive legal and equitable jurisdiction of all of the following:

> (a) A matter that relates to the settlement of a deceased individual's estate, whether testate or intestate, who was at the time of death domiciled in the county or was at the time of death domiciled out of state leaving an estate within the county to be administered, including, but not limited to, all of the following proceedings:

> (*i*) The internal affairs of the estate.

> (*ii*) Estate administration, settlement, and distribution.

> (*iii*) Declaration of rights that involve an estate, devisee, heir, or fiduciary.

Additionally, MCL 700.1303(1) provides, in relevant part, as follows:

> (1) In addition to the jurisdiction conferred by [MCL 700.1302] and other laws, the court has concurrent legal and equitable jurisdiction to do all of the following in regard to an estate of a decedent, protected individual, ward, or trust:

> (a) Determine a property right or interest.

> * * *

> (h) Hear and decide a claim by or against a fiduciary or trustee for the return of property.

MCL 700.1303(3) explains that the "underlying purpose and policy of this section is to simplify the disposition of an action or proceeding involving a decedent's . . . estate by consolidating the probate and other related actions or proceedings in the probate court."

If two courts have concurrent jurisdiction, then "a plaintiff may properly file its case in either . . . ." *Wayne Co Chief Executive v Governor*, 230 Mich App 258, 270; 583 NW2d 512 (1998). As an initial matter, the probate court had concurrent jurisdiction to determine a property right or interest in regard to an estate of a decedent pursuant to MCL 700.1303(a). Thus, the question of the ownership of the account was properly before the probate court. Nonetheless, Kiehl asserts that the probate court lacked jurisdiction to amend the judgment of divorce on the ground that only the court that entered the judgment of divorce was entitled to do so. But the probate court did not amend the judgment of divorce; it merely interpreted the terms of the judgment of divorce as part of its determination of the ownership of the account.

Kiehl does not argue that the probate court was prohibited from relying on or interpreting the judgment of divorce. And, while not dispositive, this Court has reviewed a probate court's interpretation of a provision in a consent judgment of divorce when deciding a claim against a

decedent's estate and its personal representative without expressing any concern over that court's jurisdiction. See *In re Lobaina Estate*, 267 Mich App 415, 418; 705 NW2d 34 (2005). Thus, the probate court did not lack jurisdiction when the court interpreted the judgment of divorce.

Kiehl argues that the probate court also lacked jurisdiction to equitably divide marital property. But the probate court did no such thing. After the probate court concluded that the judgment of divorce terminated Kiehl's survivorship interest in the account, the court determined that Kiehl was entitled to half of the account's predivorce value as reflected in the December 1992 bank statement. That decision was consistent with the presumption that the owners of a joint account, while it has that status, "are equal contributors." *Lewis Estate*, 329 Mich App at 96. Thus, the probate court properly applied the presumption of ownership of funds held in a joint account by allocating half of the predivorce balance to Kiehl.

We further note that Kiehl challenged the probate court's jurisdiction during the hearing on the petition on the ground that Busby was required to file a complaint rather than a petition.[1] The probate court rejected Kiehl's argument on the ground that Busby's petition was "appropriately couched as a petition to determine whether the decedent's estate owns a piece of property" which was "still at the bank and being held there."

"The failure to distinguish between the erroneous exercise of jurisdiction and the want of jurisdiction is a fruitful source of confusion and errancy of decision." *Buczkowski v Buczkowski*, 351 Mich 216, 221; 88 NW2d 416 (1958) (quotation marks and citation omitted). As noted, the probate court has concurrent subject-matter jurisdiction to determine a property right or interest with regard to an estate of a decedent. MCL 700.1303(1)(a).

MCR 5.101(A) provides that, in the probate court, there "are two forms of action, a 'proceeding' and a 'civil action.' " MCR 5.101(B) states that "[a] proceeding is commenced by filing an application or a petition with the court." According to MCR 5.101(C)(1), certain actions "must be titled civil actions and commenced by filing a complaint," and those actions include any "action against another filed by a fiduciary or trustee." Use of the term "must" "indicates that something is mandatory." *Vyletel-Rivard v Rivard*, 286 Mich App 13, 25; 777 NW2d 722 (2009).

Busby, as the personal representative of Knoblock's estate and thus a fiduciary, commenced an action against Kiehl by filing a petition. But under MCR 5.101(C)(1), Busby was required to commence the action by filing a complaint. Were Kiehl to revive her jurisdictional challenge on that basis, she would be able to show only an erroneous exercise of jurisdiction, not a lack of subject-matter jurisdiction. And any such argument would ultimately be unavailing, because, "[i]n determining jurisdiction, this Court will look beyond a plaintiff's choice of labels to the true nature of the plaintiff's claim." *Manning*, 229 Mich at 613. Furthermore, an error in the trial court "is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears

---

[1] Kiehl addresses that jurisdictional challenge in a footnote in her brief on appeal, now asserting that this alleged jurisdictional error was rendered harmless because Busby "failed in [her] initial burden of rebutting the presumption that Kiehl has survivorship rights in the joint account."

to the court inconsistent with substantial justice." MCR 2.613(A). In this case, there is no indication in the record that any irregularity in the form of Busby's pleading adversely affected her. Accordingly, to the extent that Busby mislabeled her action, any error in the probate court's decision to let the action continue was harmless.

## IV. JOINT BANK ACCOUNTS UNDER MCL 487.703

Kiehl argues that the probate court erred by finding that Kiehl's right of survivorship was terminated by the judgment of divorce, and thus that the postdivorce balance of the account belonged solely to Knoblock's estate. We disagree.

This Court has observed that the "Legislature has enacted a variety of statutes governing a party's financial arrangements." *Lewis Estate*, 329 Mich App at 93. MCL 487.703 is one such statute,[2] providing, in relevant part:

> When a deposit shall be made, in any bank by any person in the name of such depositor or any other person, *and in form to be paid to either or the survivor of them*, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of 1 of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof.
>
> * * *
>
> The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors. [Emphasis added.]

The initial version of MCL 487.703 went into effect in 1909, 1909 PA 248, and the current version went into effect on July 23, 1937, 1937 PA 286. Thus, the Supreme Court and this Court have interpreted the statute on many occasions.

---

[2] While not implicated here, the Statutory Joint Account Act, MCL 487.711 *et seq*., allows one or more persons to create an account under its terms by signing an appropriate contract with a financial institution. MCL 487.715. And, in the context of credit union accounts, MCL 490.56 provides that a "multiple-party account payable to 2 or more persons, jointly or severally, which does not expressly provide that there is no right of survivorship, though there is no mention of survivorship or joint tenancy, is presumed to be a survivorship account."

The Supreme Court has explained that, under MCL 487.703, "the vesting of title to funds in another by the creation of a joint bank account with right of survivorship is a statutory method of transfer of title." *Jacques v Jacques*, 352 Mich 127, 134; 89 NW2d 451 (1958). The Court observed that a "joint and survivorship bank account" was similar to but distinct from an *inter vivos* gift, and in "some sense" had "the effect of a testamentary disposition" without the formalities for making a will. *Id.* Thus, a joint account with the right of survivorship is sometimes called "the poor man's will." *Id.* at 135 (quotation marks and citation omitted).

"Broadly speaking, a joint account under MCL 487.703 provides two primary rights—a right of proportional share of the funds in the account and a right of survivorship." *Lewis Estate*, 329 Mich App at 95. The account holders, "by their words or deeds, can agree to put conditions or restrictions on the account, for example, by expressing an intent that the funds are to be held merely for the convenience of the depositor or are otherwise subject to revocation at the sole discretion of the depositor." *Id.* The creation of a joint account with the right of survivorship fixes the ownership of the joint account "in the persons named as joint tenants" unless there is competent evidence showing otherwise, and the "ownership remains joint between the parties until and unless there is a surviving party, in which case sole title vests in that survivor." *Id.* (quotation marks and citation omitted).

 "This statute contains [two] conditions to be fulfilled before it becomes controlling." *Leib v Genesee Merchants Bank & Tr Co*, 371 Mich 89, 93; 123 NW2d 140 (1963). "First, a deposit must be made by a person in the name of the depositor, '*or*' any other person," and second, "the deposit be in a form to 'be paid to either *or the survivor of them.*' " *Id.*

"An account may be joint during the lifetime of the parties without ipso facto carrying the right of survivorship." *Id.* at 95. See also *Danielson v Lazoski*, 209 Mich App 623, 625; 531 NW2d 799 (1995) (explaining that there "is no indication in the statutory or common law that the presumption of equal ownership applies solely to joint accounts under MCL 487.703"). MCL 487.703 "makes the mere creation of the joint account with the use of the words 'right of survivorship' prima facie evidence of intention to vest title." *Leib*, 371 Mich at 94 (quotation marks and citation omitted). Thus, a signature card for a joint account does not establish that a decedent intended for the account to have a right of survivorship unless it expressly provided for such a right. *Id.*

Where "the statutory requirements were not fulfilled," the next inquiry is "whether there was anything else in the instrument itself or in the circumstances surrounding the creation of the joint account which would afford any indication of the intent of the party or parties creating it." *Id.* The "intent of the parties can be founded upon other admissible evidence." *Id.*[3]

---

[3] But the Supreme Court has also held that MCL 487.703 "requires written evidence" of an intent to grant a person a right of survivorship to a joint account. *Peoples State Bank of Belleville v Allstaedt*, 301 Mich 662, 665; 4 NW2d 48 (1942).

If the statutory requirements are satisfied, then "a deposit made in a jointly held bank account with the right of survivorship, in the absence of fraud or undue influence, is prima facie evidence of the depositor's intention to vest title to the deposit in a surviving joint owner." *In re Cullman Estate*, 169 Mich App 778, 786; 426 NW2d 811 (1988).[4] MCL 487.703 "refers to the establishment of a joint account in statutory form as prima facie evidence of the intention of such depositors to vest title," and caselaw frequently characterizes the prima facie evidence of that intent as "a statutory presumption." *Jacques*, 352 Mich at 135 (quotation marks and citation omitted).

"The statutory presumption that a decedent intended funds in a joint account to become the sole property of the survivor arises 'based on evidence that the decedent created and maintained the accounts until [his] death.' " *Lewis Estate*, 329 Mich App at 97 (citation omitted, alteration in original). "This presumption can, however, be rebutted by reasonably clear and persuasive proof to the contrary, i.e., by proof of the decedent's intent that title to the jointly held funds not vest in the survivor." *In re Cullman Estate*, 169 Mich App at 786. Thus, a party's rights to funds held in a joint account are "determined by the intent of the depositor at the time of the deposit," and "[n]o later change of heart on [a] decedent's part could have divested" a joint accountholder's "right of survivorship, unless that change of heart was accompanied by withdrawal of the funds from the account." *In re Pitre*, 202 Mich App 241, 244; 508 NW2d 140 (1993).

Under MCL 487.703, "the law presumes that joint tenants are equal contributors, have equal ownership shares, and have equal rights to access and use the funds." *Lewis Estate*, 329 Mich App at 96. To the extent there are questions concerning ownership or use of, or access and contribution to, funds in the account while the joint account holders are still living, the presumption may be rebutted, because the " 'realities of ownership,' not the form of the account, control," and the rights of the account holders "are determined by the intent of the depositor at the time of the deposit." *Id*. at 96-97 (citations omitted).

Kiehl asserts that, although the probate court properly found that the evidence showed that she and Knoblock intended for the account to be joint with a right of survivorship pursuant to MCL 487.703, the court erred by concluding that the judgment of divorce terminated her right of survivorship. According to Kiehl, the probate court was required to find that she was the sole owner of the account following Knoblock's death because there was no evidence showing that the account was not intended to continue as a joint account with a right of survivorship. But the probate court's analysis did not pertain to whether the statutory presumption of survivorship was rebutted, and instead focused on whether Kiehl's survivorship interest was terminated by the judgment of divorce.

While the probate court acknowledged that the judgment of divorce did not specifically address the subject account, or joint accounts in general, the court found that the judgment contained a property settlement intended to address all of the couple's property while eliminating

---

[4] Under MCR 7.215(J)(1), this Court need not follow published opinions issued by this Court before November 1, 1990. But such opinions "are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

any rights of survivorship either party had in the other's accounts, that the bank statement for the account was sent to only Knoblock, and that Kiehl did not use or know about the account. Thus, the probate court found that the account belonged solely to Knoblock's estate, less half the postdivorce value reflected on the 1992 bank statement.

Kiehl protests that the judgment of divorce did not specifically address the joint account. But the judgment of divorce had a catch-all provision for "personal property" that was not specifically identified, which awarded such property that was in his possession to Knoblock, and also contained a provision terminating any claims either party had to personal property in the possession of the other.

Personal property is any " 'movable or intangible thing that is subject to ownership and not classified as real property[.]' " *Fodale v Waste Mgt of Mich, Inc*, 271 Mich App 11, 21; 718 NW2d 827 (2006), quoting *Black's Law Dictionary* (8th ed). Bank accounts fall within that definition. Thus, the probate court properly determined that the account, being a form of personal property, was awarded to Knoblock under the catch-all provision, because the account was effectively in his sole possession, given that he alone received the bank statement, Kiehl had no knowledge of it, and the judgment of divorce terminated Kiehl's right of survivorship insofar as it was a claim she had against Knoblock's personal property.

Given the foregoing, we need not address the remainder of Kiehl's arguments on appeal nor Busby's alternative ground for affirmance.

Affirmed.

/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Michael J. Riordan